HARRY MARSHALL ET AL. *v.* TOWN OF NEWINGTON
(two cases)

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued January 3—decided January 30, 1968

*Abraham S. Silver,* for the appellants (plaintiffs).

*William W. Sprague,* with whom was *David C. Rappe,* for the appellee (defendant).

HOUSE, J. The plaintiffs appealed to the Court of Common Pleas from a decision of the board of tax review of the defendant town which denied relief to the plaintiffs on their appeals from the refusal of the assessor to classify and assess three tracts of their land as farmland on the tax lists of 1964 and 1965. By way of relief, the appeals prayed only that the valuation of the property be reduced. During the trial, the plaintiffs were permitted to amend their prayers for relief to include a prayer that the property be classified as farmland. The court found the issues for the defendant in each case and rendered judgments dismissing the appeals. From those judgments the plaintiffs have

taken a combined appeal to us pursuant to Practice Book § 606.

In 1963, the General Assembly enacted §§ 12-107a —12-107c of the General Statutes, which provided for preferential tax treatment of farmland. In its "[d]eclaration of policy," § 12-107a declares that it is in the public interest to encourage the preservation of farmland in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state and to prevent the forced conversion of farmland to more intensive uses as a result of economic pressures caused by the assessment of the land for purposes of property taxation at values incompatible with their preservation as farmland. "[F]arm land" is defined to mean "any tract or tracts of land, including woodland and wasteland, constituting a farm unit." General Statutes § 12-107b.

Section 12-107c (a) directs that when any owner of land has applied for its classification as farmland, the local assessor shall determine whether it qualifies for such a classification, and, "[i]n determining whether such land is farm land, such assessor shall take into account, among other things, the acreage of such land, the portion thereof in actual use for farming or agricultural operations, the productivity of such land, the gross income derived therefrom, the nature and value of the equipment used in connection therewith, and the extent to which the tracts comprising such land are contiguous." The same statute in subsection (d) provides that any person aggrieved by the denial of any application for the classification of land as farmland shall have the same rights and remedies for appeal and relief as are provided by the General Statutes for taxpayers claiming to be aggrieved

by the doings of assessors or boards of tax review.

The provisions of one other statute are relevant. Section 12-63 provides that, although the present true and actual value of all other property shall be deemed by all assessors and boards of tax review to be the fair market value, the true and actual value of land classified as farmland pursuant to § 12-107c (as well as open space land and forest land) "shall be based upon its current use without regard to neighborhood land use of a more intensive nature." It is admitted that the plaintiffs, in accordance with the statutory requirements, petitioned the assessor for the classification of the three parcels as farmland, that he refused to make the requested classification, that he assessed them on the basis of fair market value, that the plaintiffs appealed to the board of tax review, and that the board refused to classify the parcels as farmland.

The court's finding lacks the clarity and specificity which is not only desirable but necessary to test the validity of its conclusions. Practice Book § 619. It appears that the three tracts of land involved a total of slightly over seventy-three acres, that the plaintiffs' principal crop was sweet corn, that one of the plaintiffs estimated that he picked 500 dozen ears of corn per acre planted and sold them for seventy cents a dozen, and that in the years 1964 and 1965 the plaintiffs expended $1977.20 per year for fertilizer and farm supplies. Their farm equipment consisted of three tractors, one corn planter, one hay baler, one mowing machine, two harrows, one plow and two sprayers for which the assessor allowed a $3000 farm equipment tax exemption pursuant to § 12-91 of the General Statutes, which provides for a maximum exemption of $3000 for farm machinery "actually and exclu-

sively used in farming." On one tract, consisting of 35.3 acres, fifteen acres of corn were cultivated. Some fifteen acres of the remaining acres of that tract were swampy and unfit for cultivation, and about 3.6 acres were wooded. The fifteen acres of swamp land, however, were not included as part of the "farm unit" on the plaintiffs' application for farm classification. The court also specifically found that in Connecticut farm units traditionally include some land which is not tillable and that it is a recognized principle of good farming to allow portions of tillable land to remain unused for one or more years. Another parcel consisting of 9.7 acres was treated with atrozine, a recognized herbicide, and seven acres of it was cultivated with rye. The third parcel consisted of 28.2 acres. In 1963 and 1964, a knoll on this parcel was removed, the topsoil was accumulated on adjacent land, and the underlying material was sold as fill. In their farm classification application, the plaintiffs claimed that twenty acres of the tract were usable for farming. They did not include the 8.2 acres from which fill was removed as a part of the acreage for the farm unit, and their application claimed that, of the remaining twenty acres, ten were cultivated with corn. Photographs introduced as exhibits disclose an extensive planting of corn on this tract. The plaintiffs have assigned as error the failure of the court to find that on this tract they produced 9500 dozen ears of corn having a retail value of $6650. Their brief, however, contains no appendix with evidence supporting their assertion, and this assignment of error cannot be considered. Practice Book § 717; *Rusinak* v. *Paushter*, 151 Conn. 299, 197 A.2d 336.

Over the objection of the plaintiffs, the court admitted evidence that the subject property was

zoned for industrial use, and it found that the property was so zoned. It also found that the plaintiffs' principal source of income was from retail sales at a stand where they sold not only the corn grown on their cultivated lands but other produce, fruits, groceries and beer. It further found that, in 1960, the plaintiffs had sold about three acres of adjoining industrial land for $28,000, that in 1962 another adjacent parcel of industrial land was sold for approximately $25,000, and that in 1964 and 1965 they derived substantial income from the operation of the stand, from rents, from the sale of topsoil and fill and from horse purses.

The court concluded, inter alia, that the highest and best use of the plaintiffs' land was industrial, that the produce raised on their land was a minor source of their income, that "[a] small portion of [the] plaintiffs' land . . . [was] actively used for farm purpose," that their "use of their land has not been shown to be in furtherance of the declared policy of general statute [§] 12-107," and that the assessor, using the criteria established in the statutes, was justified in refusing to classify the plaintiffs' land as farmland. Judgment was thereupon rendered dismissing the appeals.

Obviously, the conclusion that the produce raised on the plaintiffs' land was a minor source of their total income from all sources is completely irrelevant to the question whether they were using a particular piece of land for farming purposes. Equally irrelevant is a finding that adjacent industrial lands were sold for high prices. Furthermore, although the conclusions that the highest and best use of a particular parcel was for industrial purposes and that it was zoned for industrial purposes at the request or instigation of the owner would be rele-

vant to a determination of the land's fair market value, such conclusions are not relevant to a determination as to whether in fact the land is being used for farming purposes. A declared purpose of the statute granting favorable tax treatment to farmland is to prevent its forced conversion to more intensive uses as a result of an assessment based on its market value rather than its current use. In addition, the facts found concerning the extent of farming done by the plaintiffs and the $3000 exemption afforded their farming equipment seem inconsistent with the conclusions that only a small portion of the land was actively used for farm purposes and that not a single acre should be classified as farmland.

These considerations have prompted us to consult the court's memorandum of decision, which we may do for a better understanding of the basis of the decision. *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855; Maltbie, Conn. App. Proc. § 152. From this examination, the conclusion is inescapable that the court's decision as to a proper classification of the land was predicated, not on the actual use to which the land was being put, which is the criterion the statute specifies, but on the fact that its highest and best use would be for industrial purposes and that at the instigation of the plaintiffs it was in a zone which would permit such a use. This was error.

The defendant filed a bill of exceptions which we consider so far as it presents a question likely to arise on a new trial. Practice Book § 659. At the trial, the defendant claimed that the plaintiffs failed to bring their actions in a proper manner so as to entitle them to a consideration of the issue of proper classification in that they raised the issue

through an appeal to the board of tax review and then in an appeal to the Court of Common Pleas from that board's decision. The defendant claims that only the assessor is authorized by statute to determine whether land is to be classified as farmland and that § 12-111 of the General Statutes, which defines the powers of boards of tax review, although it authorizes such boards to equalize and adjust valuations and assessment lists, does not give boards of tax review jurisdiction in the matter of the reclassification of farmland. The court overruled the defendant's claims.

There was no error in this ruling. Section 12-107c (d) expressly provides that any person aggrieved by the denial of any application for the classification of land as farmland "shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of tax review." Section 12-111 authorizes any person claiming to be aggrieved by the doings of assessors to appeal to the board of tax review, "which shall determine all such appeals." Section 12-118 authorizes an appeal to the Court of Common Pleas by any person claiming to be aggrieved by an action of the board of tax review. The plaintiffs followed the procedure authorized by the applicable statutes.

It is unnecessary to consider the remaining questions raised by the bill of exceptions.

There is error in both cases, the judgments are set aside and a new trial is ordered in both.

In this opinion the other judges concurred.