HELMER JOHNSON ET AL. *v.* BOARD OF TAX REVIEW
OF THE TOWN OF FAIRFIELD

ALCORN, C. J., HOUSE, COTTER, THIM and RYAN, Js.

Argued October 8—decided November 23, 1970

*Noel R. Newman,* for the appellant (defendant).

*Robert M. Zeisler,* for the appellees (plaintiffs).

THIM, J.  This appeal concerns the classification of certain land in the town of Fairfield as "farm land". The facts are not in dispute. On October 1, 1965, the plaintiffs owned a tract of land consisting

of 10.96 acres of cultivated nursery land. This land was leased to Johnson's Nursery, Inc., to be used for growing plants, trees and shrubs. Nurseries are a permitted use in the one-acre residential zone wherein this property is located. On October 1, 1965, the land was fully cultivated with plants, trees, bushes and shrubs.

On October 28, 1965, the plaintiffs applied to the assessor to classify the land as farmland, but the assessor refused so to classify it. The plaintiffs appealed to the board of tax review. The board sustained the decision of the assessor. The plaintiffs then appealed to the Court of Common Pleas from the decision of the board of tax review. The trial court sustained the plaintiffs' appeal on the ground that the land was "farm land" within the purview of §§ 12-107a—12-107e of the General Statutes. From the judgment rendered the defendant appealed to this court.

"In 1963, the General Assembly enacted §§ 12-107a —12-107c of the General Statutes, which provided for preferential tax treatment of farmland. In its '[d]eclaration of policy,' § 12-107a declares that it is in the public interest to encourage the preservation of farmland in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state and to prevent the forced conversion of farmland to more intensive uses as a result of economic pressures caused by the assessment of the land for purposes of property taxation at values incompatible with their preservation as farmland." *Marshall* v. *Newington,* 156 Conn. 107, 109, 239 A.2d 478. In addition to the tax aspect of §§ 12-107a—12-107e, the statute is concerned with conservation. As originally enacted by the legislature, §§ 12-107a—

12-107e were parts of Public Act No. 490 of the January, 1963, legislative session. That act is entitled: "An Act Concerning the Taxation and Preservation of Farm, Forest, and Open Space Land." An examination of this public act clearly indicates that the legislature contemplated more than the mere creation of tax advantages for producers of food products. A portion of Public Act 490, § 7, was not incorporated into the tax statutes, but rather, became a part of a general statutory provision, § 7-131a, which is entitled "Conservation commissions." It is thus clear that §§ 12-107a—12-107e, as derived from Public Act 490, are as much conservation statutes as they are tax relief measures. The declaration of policy in § 12-107a recites, inter alia, that it is in the public interest "to conserve the state's natural resources". Indeed, it would appear that the purpose of the tax relief is to aid the conservation effort, and not merely to aid food production itself. Clearly, aid to farm food production is not the sole purpose of the statute.

The question decisive of this appeal is whether "cultivated nursery land" constitutes "farm land," as defined in § 12-107b. "The intent of a statute is to be sought first in the language used, and if that is unambiguous we need not resort to other aids of interpretation." *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886. "[F]arm land", as defined in § 12-107b, is "any tract or tracts of land, including woodland and wasteland, constituting a farm unit". "[F]arm land" is thus not specifically defined. "[F]arm land" is "land constituting a farm unit." The two are equal. All that is stated is that we must look to the definitions of "farm" and "unit" to discover what is meant by "farm land." Since neither

"farm" nor "unit" is defined in § 12-107b, the statute is ambiguous and we must resort to other aids for their definitions.

Under § 1-1 of the General Statutes, in the construction of statutes, "words and phrases shall be construed according to the commonly approved usage of the language". This would indicate that where, as here, the statute in question is barren as to specific definitions, the approach should be to discover the common usage. Section 1-1, however, continues by defining certain terms. Among them appears: "Except as otherwise specifically defined, the words 'agriculture' and 'farming' shall include cultivation of the soil . . . , forestry, [and] raising or harvesting any agricultural or horticultural commodity . . . . The term 'farm' includes farm buildings, nurseries . . . greenhouses or structures used primarily for the raising of agricultural or horticultural commodities." Thus, a nursery is expressly included in the statutory definition of a "farm". "[F]arming" includes the cultivation of the soil and the raising of any agricultural or horticultural commodity. Since "horticulture" is not defined, we must apply common usage. Webster's Third New International Dictionary defines "horticulture" as "the cultivation of an orchard, garden, or nursery on a small or large scale: the science and art of growing . . . ornamental plants". The same source defines "commodity" as "a product of agriculture". It is thus clear that, by including the raising or harvesting of any "horticultural commodity", the § 1-1 definition of "farming" and "agriculture" does include nurseries.

"It is an elementary principle of statutory construction that '[n]o word in the statute shall be treated as superfluous, void or insignificant, unless

there are impelling reasons . . . why the principle cannot be followed.' *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732." *Archibald* v. *Sullivan,* 152 Conn. 663, 668, 211 A.2d 692. To search for a definition beyond that in § 1-1 would require us to ignore the specific direction that "agriculture" and "farming" *shall* be defined as stated therein. To do so would be improper. Thus, we must apply the definitions prescribed by the legislature in § 1-1. The last sentence of the § 1-1 definitions here considered directs that those definitions "shall not be construed . . . to grant any local property tax exemptions other than those granted under the general statutes to real or personal property used in agriculture or farming." In this case, the § 1-1 definitions are pertinent because, while §§ 12-107a—12-107c purport to exempt "farm land," the term is not defined. In applying the definition found in § 1-1, therefore, no property exemption not allowed in §§ 12-107a—12-107c is granted.

This brings us to the definition of the word "unit." Resorting once again to Webster's Third New International Dictionary for the common usage, we find the definition to be: "a single thing . . . that is a constituent and isolable member of some more inclusive whole." Combining the definitions of "farm" and "unit," and transplanting them into the § 12-107b definition of "farm land" we have, as pertinent to the instant case: a tract or tracts of land making up a portion of a geographical area which is used as a nursery. Thus viewed, the definition is determinative of the issue. Nursery land is "farm land" within the purview of §§ 12-107a—12-107c of the General Statutes.

The defendant argues that in § 12-81, subparagraphs (39) and (44), the terms "[f]arm produce"

and "[n]ursery products" are mutually exclusive, and thus that the legislature did not intend "farm land" to encompass nurseries. For us to apply § 12-81 as requested would be to ignore § 1-1, or to determine that § 12-81 expresses general legislative intent and that § 1-1 does not. Neither approach would be correct. Section 1-1 contains general definitions to be used in all cases unless the legislature specifically provides otherwise in a statute. In §§ 12-107a—12-107e there is no definition of "farm" and we must thus use the § 1-1 definition. We cannot resort to § 12-81 to determine intent when, as here, § 1-1 is clear.

Our interpretation of "farm land" as used in §§ 12-107a—12-107c is supported by the legislative purpose expressed in § 12-107a. While nurseries do not provide sources of food in close proximity to metropolitan areas, under the accepted definition of "farm", they probably do provide "farm products". Even were we to accept the defendant's contention that nursery products are *not* farm products, as shown by § 12-81, nurseries would still promote the further purposes of § 12-107a. They do encourage the preservation of farmland and they do conserve natural resources. By using the terms "open space land" and "wasteland" the statute is most unambiguous in stating that its purpose relates to the condition of the land as much as it does to the type of products produced thereon. The legislative purpose is thus sufficiently broad to include nurseries.

There is no error.

In this opinion the other judges concurred.