RICHARD PAUKER ET AL. *v.* LINDA ROIG ET AL.
(14984)

PETERS, C. J., and BERDON, NORCOTT, KATZ and PALMER, Js.

---

Argued January 3—decision released February 28, 1995

*Lawrence P. Weisman,* with whom, on the brief, was *Andrew R. Tarshis,* for the appellants (plaintiffs).

*Christopher J. Jarboe,* for the appellees (defendants).

PETERS, C. J. In this tax appeal, the only issue is whether it is proper to revalue and reassess real property once a subdivision of the property has been approved and recorded, even though the conditions attached to the subdivision approval have not yet been fulfilled. The plaintiffs, Richard and Joyce Pauker (taxpayers), filed an amended complaint pursuant to General Statutes § 12-119,[1] alleging that the defendants,

---

[1] General Statutes § 12-119 provides: "REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under

Linda Roig, the tax assessor of the town of Weston, and the town of Weston had grossly overvalued the taxpayers' property. Both parties moved for summary judgment. The trial court denied the motion of the taxpayers and granted the motion of the defendants for summary judgment. The taxpayers appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The facts are undisputed. The taxpayers, as trustees, owned three contiguous parcels of land in Weston that consist of approximately eighty-two acres. On July 22, 1991, the Weston planning and zoning commission approved the taxpayers' application for a subdivision of the three parcels into twenty-nine lots, with roads and dedicated open space. The subdivision approval allowed the taxpayers to proceed with development in two phases, a first phase comprising seven lots, and a second phase comprising the remaining twenty-two lots. Construction of phase I began promptly. Under the terms of the subdivision approval, however, before

---

all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court.''

construction could begin on phase II, the taxpayers were required to comply with specified conditions including engineering studies and plans for dealing with drainage concerns. Despite the costs and delays associated with the required performance of these conditions, the taxpayers did not appeal the validity of the subdivision approval. On August 29, 1991, the taxpayers recorded subdivision maps on the Weston land records for the entire subdivision project.

After the recordation of the subdivision maps, the tax assessor prepared new field cards for the 1991 grand list for each of the lots in the approved subdivision. Written notice of the assessments was sent to the taxpayers. The taxpayers appealed only the assessments on lots eight through twenty-nine (phase II) of the subdivision. The board of tax review reduced the assessment on these lots from $4,009,760 to $3,007,320. The present record does not disclose whether the taxpayers took an appeal from the decision of the board of tax review.[2]

Instead, the taxpayers initiated a plenary action, pursuant to § 12-119, in which they claimed that their tax assessments are so manifestly excessive as to be illegal. They maintained that the defendants had exceeded their authority by undertaking an interim revaluation of the taxpayers' property simply because the subdivision approval had been granted and recorded. In the view of the taxpayers, until they have actually fulfilled the conditions incorporated in the subdivision approval, their property should not be revalued and reassessed. The trial court disagreed with the taxpayers' contention in light of the provisions of General Statutes § 12-42,[3] which requires separate assessments of sep-

---

[2] The taxpayers had the right to file such an appeal pursuant to General Statutes § 12-117a. See footnote 5.

[3] General Statutes § 12-42 provides: "TIME FOR GIVING IN TAX LIST; PENALTY FOR FAILURE TO FILE. Each resident of any town liable to give in a list and pay taxes therein shall, except as otherwise specially provided

arate lots, and General Statutes § 12-55,[4] which authorizes reassessments "required by law."

In their appeal, the taxpayers renew their argument that the conditional approval of their subdivision application does not justify an immediate revaluation and reassessment of their property as individual building lots because, until the conditions are satisfied, the property cannot be further developed and the lots cannot be sold. We agree with the trial court that this argument is unpersuasive.

The principles that govern a complaint filed pursuant to § 12-119 are not in dispute. In contrast to § 12-117a,[5]

by law, on or before the first day of November, annually, give in his list, made as prescribed by law, making a separate description of each parcel of real estate. When reference can be made to a map on file in the town clerk's office, such reference shall be a sufficient description. If he fails to file such list, the assessors shall fill out a list for him, putting therein all property which they have reason to believe is owned by him, liable to taxation, at the percentage of its actual valuation, as determined by the assessors in accordance with the provisions of sections 12–64 and 12-71, from the best information they can obtain, and add thereto twenty-five per cent of such assessment and in such list they shall make a separate description and assessment of each parcel of real estate. When the first day of November is Sunday, the list may be made out on the day following."

[4] General Statutes § 12-55 provides in relevant part: "LISTS; NOTICE OF INCREASE; PUBLIC INSPECTION; ABSTRACTS. (a) When the lists of any town have been so received or made by the assessor or board of assessors, they shall equalize the same, if necessary, and make any assessment omitted by mistake or required by law."

[5] General Statutes § 12-117a provides: "APPEALS FROM DECISIONS OF BOARDS OF TAX REVIEW CONCERNING ASSESSMENT LISTS FOR ASSESSMENT YEARS COMMENCING OCTOBER 1, 1989, TO OCTOBER 1, 1992. Notwithstanding the provisions of sections 12-118, 12-121aa and 12-121bb, any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, or October 1, 1994, may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by

which allows a taxpayer to challenge the assessor's valuation of his property, § 12-119 allows a taxpayer "to bring a claim that the tax was imposed by a town that had no authority to tax the subject property, or that the assessment was 'manifestly excessive *and* could not have been arrived at except by disregarding

---

a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court, and the pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five percent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

Prior to October 1, 1988, appeals from decisions of local boards of tax review were governed by General Statutes § 12-118. Section 12-118 now provides for appeals to the Superior Court from decisions of the Connecticut appeals board for property valuation.

the provisions of the statutes for determining the valuation of [the real] property . . . .' (Emphasis added.) Our case law makes clear that a claim that an assessment is 'excessive' is not enough to support an action under this statute. Instead, § 12-119 requires an allegation that something more than mere valuation is at issue." *Second Stone Ridge Cooperative Corp.* v. *Bridgeport,* 220 Conn. 335, 339–40, 597 A.2d 326 (1991); accord *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 392, 126 A. 1 (1924).

To fit their claim for relief within § 12-119, the taxpayers have advanced three arguments. They maintain that the reassessment of their property was illegal because: (1) the conditional subdivision approval conferred no immediate benefit upon their property and a reassessment on that basis was manifestly excessive; (2) reassessment of their property violated General Statutes (Rev. to 1991) § 12-62, which expressly provides for ten year revaluations of real property and has been judicially construed to preclude interim revaluations and reassessments; and (3) the onerous nature of the conditions attached to the subdivision approval, and their nonfulfillment at the time of the revaluation, distinguish this case from *Fyber Properties Killingworth Ltd. Partnership* v. *Shanoff,* 228 Conn. 476, 636 A.2d 834 (1994) (*Fyber Properties*), in which conditional subdivision approval was held to authorize revaluation and reassessment.

The taxpayers' first claim warrants little discussion. As a matter of fact, they have advanced no evidence in support of their contention that subdivision approval, per se, confers no benefit that enhances the value of their property. It is too late to raise a factual question now, when all the parties agreed at trial that there were no factual disputes in this case. As a matter of law, they cannot raise such a claim under § 12-119, which requires a showing that an assessment is both mani-

festly excessive *and* illegal. Disagreements about the measurement of a benefit to real property do not make an assessment illegal.

The taxpayers' second claim rests on a series of cases in which this court has construed General Statutes §§ 12-62[6] and 12-64[7] to manifest the intent of the legislature that the "true and actual valuation" of real property that is required by § 12-64 is ordinarily accomplished by the ten year revaluation that is required by § 12-62. The taxpayers cite several cases in which we held, accordingly, that assessors need not undertake an interim revaluation on the ground of market fluctuations, at least in the absence of a showing of the destruction or expansion of the property, a substantial change in its use or zoning classification, or a decision by the taxpayer to go out of business. *Ralston Purina Co.* v. *Board of Tax Review*, 203 Conn. 425, 435–39, 525 A.2d 91 (1987); *Uniroyal, Inc.* v. *Board of Tax Review*, 182 Conn. 619, 629, 438 A.2d 782 (1981) (*Uniroyal II*). The taxpayers in this case maintain that these precedents demonstrate that the revaluation and reassessment of their property violated § 12-64.

The taxpayers' reliance on the case law under § 12-64 is flawed, however, in a number of important respects. The taxpayers assume that a subdivision approval is

---

[6] General Statutes (Rev. to 1991) § 12-62 provides in relevant part: "PERIODIC REVALUATION OF REAL ESTATE. . . . (a) Commencing October 1, 1991, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the effective date of the last preceding revaluation of all real property and every ten years thereafter, revalue all of the real estate in their respective municipalities for assessment purposes . . . ."

[7] General Statutes § 12-64 provides in relevant part: "REAL ESTATE LIABLE TO TAXATION. . . . (a) All the following-mentioned property, not exempted, shall be set in the list of the town where it is situated and, except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors . . . ."

not so substantial a change in the property's use or zoning classification as would warrant an interim revaluation under *Ralston Purina Co.* and *Uniroyal II*. They assume further that these cases limit the power of assessors to undertake an interim revaluation. They assume finally that the authority exercised by the defendants in this case was an interim revaluation rather than an original valuation of building lots that had no prior existence. These assumptions are of doubtful validity.

We need not decide today whether subdivision approvals fall within the exceptional circumstances hypothetically identified in *Ralston Purina Co.* and *Uniroyal II*, because those cases provide little guidance for the issue before us. *Ralston Purina Co.* and *Uniroyal II* held only that tax assessors ordinarily are not *statutorily required* under § 12-64 to undertake interim revaluations. These cases did not address the extent to which tax assessors might invoke other statutes in support of the *authority* to undertake an interim revaluation, should they decide to do so. We recognized this distinction between mandated and permissive revaluations in *84 Century Ltd. Partnership* v. *Board of Tax Review*, 207 Conn. 250, 251, 260–62, 541 A.2d 478 (1988), in which we concluded that, although tax assessors cannot be required to make an interim revaluation of property, they may do so in accordance with § 12-55, which authorizes assessors to equalize the tax lists.

Our decision in *84 Century Ltd. Partnership* furnishes a persuasive analogy for this case, in which the defendants based their revaluation of the taxpayers' property on §§ 12-42 and 12-55. We have construed § 12-42 to require tax assessors to make "a separate description of, and valuation for, each parcel of real estate." *Empire Estates, Inc.* v. *Stamford*, 147 Conn. 262, 265, 159 A.2d 812 (1960); *State* v. *Erickson*, 104 Conn. 542,

547, 133 A. 683 (1926). Once the taxpayers' subdivision map for twenty-nine lots had been filed on the town records, the tax assessor could no longer tax their property on the basis of three larger parcels of land that had ceased to have any legal existence.[8] "If assessors fail to list real estate in separate parcels, they may be compelled to do so by mandamus." *Empire Estates, Inc.* v. *Stamford,* supra, 265. These cases furnish considerable support for the defendants' contention that the tax assessments in this case should be viewed as having arisen out of an original valuation rather than a revaluation of the taxpayers' property. Whether §§ 12-42 and 12-55 require original assessments or authorize reassessments has, however, no special significance for present purposes. However characterized, the statutes clearly establish the legality of the tax assessor's exercise of her authority in this case.

The taxpayers' final argument is that their case falls within the exception contemplated by *Fyber Properties,* supra, 228 Conn. 483, in which we recently held that, as a general rule, subdivision approval, rather than recording of a subdivision map, furnishes an appropriate occasion for the revaluation and reassessment of real property. In *Fyber Properties,* we relied on our analysis of the applicable real property statutes to conclude that "[t]he legislature has . . . indicated that, in the subdivision of property, the focal point is the date of approval." Id. We declined to decide, however, "the date upon which a property becomes taxable as a subdivision if the approval has been appealed, or if conditions imposed upon an approval have not been fully satisfied before the assessment date." Id., 481.

In light of the considerations adduced in *Fyber Properties* and the authorities cited earlier in this opin-

---

[8] At oral argument, this court was informed that the lots in phase II that are the subject of this litigation overlap the three preexisting parcels that comprise the taxpayers' real property.

ion, we now conclude that we can discern a bright-line rule underlying our taxing and real property statutes with regard to subdivision approvals. Absent an appeal challenging its validity, the approval of a subdivision authorizes a tax assessor to tax the property as subdivided lots rather than as the undifferentiated parcel or parcels that preceded the approval. The authority to tax subdivided lots in such a manner means that taxpayers have no basis for challenging such a revaluation under § 12-119. To the extent that conditional approvals deprive taxpayers of immediate economic returns from their investment, such conditional approvals raise issues only of valuation, which properly may be addressed only by appeals under § 12-117a.

The judgment is affirmed.

In this opinion the other justices concurred.