GRISWOLD AIRPORT, INC. *v.* TOWN OF
MADISON ET AL.
(SC 17938)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued September 5—officially released December 23, 2008

*William H. Clendenen, Jr.*, with whom, on the brief, was *Nancy L. Walker*, for the appellant (named defendant).

*Matthew J. Willis*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The primary issue before the court is whether a municipal tax assessor's termination of an open space classification for property on the basis of its proposed use, as opposed to its current use, was proper. The outcome of this appeal turns on the proper interpretation of General Statutes (Rev. to 2003) § 12-504h, a provision that gives municipal tax assessors discretionary authority to remove open space classifications previously placed on real property within their municipalities when the use of that property has changed. See also General Statutes § 12-107e.[1] The

[1] General Statutes (Rev. to 2003) § 12-504h provides in relevant part: "Any land which has been classified by the record owner as . . . open space land pursuant to section 12-107e shall remain so classified without the filing of any new application subsequent to such classification . . . until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or (2) such land is sold by said record owner."

Open space classifications initially are placed on real property pursuant to General Statutes § 12-107e, which provides in relevant part: "(a) The planning commission of any municipality in preparing a plan of conservation and development for such municipality may designate upon such plan areas which it recommends for preservation as areas of open space land, provided such designation is approved by a majority vote of the legislative body of such municipality. Land included in any area so designated upon such plan as finally adopted may be classified as open space land for purposes of property taxation or payments in lieu thereof if there has been no change in the use of such area which has adversely affected its essential character as an area of open space land between the date of the adoption of such plan and the date of such classification.

"(b) An owner of land included in any area designated as open space land upon any plan as finally adopted may apply for its classification as open space land on any grand list of a municipality by filing a written application for such classification with the assessor thereof . . . . The assessor shall determine whether there has been any change in the area designated as an area of open space land upon the plan of development which adversely affects its essential character as an area of open space

named defendant, the town of Madison,[2] appeals from the judgment of the trial court sustaining a municipal tax appeal brought by the plaintiff, Griswold Airport, Inc., pursuant to General Statutes § 12-119.[3] The defendant claims on appeal that the trial court improperly: (1) concluded that the defendant's tax assessor (assessor) illegally terminated the open space classification on the plaintiff's property and revalued it accordingly; and (2) granted the plaintiff relief pursuant to § 12-119. We affirm the judgment of the trial court.[4]

land and, if the assessor determines that there has been no such change, said assessor shall classify such land as open space land and include it as such on the grand list. . . ."

In the present matter, the areas designated for open space in the defendant town of Madison's comprehensive plan of development included land that had been used for airport purposes since 1968, and had been classified as open space, in accordance with that plan, since 1969.

[2] Patricia G. Hedwall, the tax assessor for the defendant town of Madison, also was named as a defendant in this action, but the plaintiff subsequently withdrew its complaint against her. Hereinafter, all references to the defendant in this opinion are to the town of Madison.

[3] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . . In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains . . . ."

[4] The defendant also claims that the trial court's decision is inconsistent with public policies favoring home rule and equal treatment of taxpayers. Because this argument was neither raised nor briefed at trial, and the defendant is asserting it for the first time on appeal, we decline to address it. See *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 597 n.24, 930 A.2d 1 (2007) ("[a]s we have observed repeatedly, [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]); *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 418, 898 A.2d 157 (2006) (declining to review claim because defendants did not raise it adequately before trial court).

The following facts, either found by the court or not disputed by the parties,[5] and procedural history are relevant to the appeal. The plaintiff is the owner of a forty-two acre parcel of land (property) on the Boston Post Road in Madison; a small airport and related structures occupy the property. From 1969 to 2004, thirty-two acres of the property were classified as open space pursuant to the defendant's open space plan and, accordingly, received the benefit of a lower tax assessment. The property was used as an airport from 1968 to 2006.

In 2000, Leyland Development, LLC (Leyland), contracted to purchase the property, contingent on receiving various approvals from land use agencies that would permit it to construct an active adult housing development on the property. In November, 2000, the defendant's planning and zoning commission (commission) approved Leyland's application for a change to the applicable zoning regulations to permit construction of the development upon special exception approval. In May, 2004, the commission granted Leyland's applications for a special exception and coastal site plan approval, thereby permitting Leyland to build 127 condominium units on the property, subject to a number of conditions. At the time of trial, construction of the project still was contingent on Leyland obtaining from the state department of environmental protection a wastewater discharge permit; see General Statutes § 22a-430; for which Leyland had applied.

Subsequent to the commission's approval of Leyland's special exception and coastal site plan applications, the assessor terminated the property's open space classification, and, consequently, reassessed the property as 127 individual condominium unit options, plus the value of the underlying land. As a result, the total

---

[5] The parties filed a stipulation of facts in the trial court.

assessed value of the property increased from \$294,420 on the 2003 grand list to \$2,516,920[6] on the 2004 grand list.

Thereafter, the plaintiff appealed from the 2004 assessment pursuant to § 12-119, claiming that it was illegal and manifestly excessive. See footnote 3 of this opinion. After a trial to the court, the trial court rendered judgment in favor of the plaintiff. The court noted the assessor's testimony that she considered the commission's approval of Leyland's special exception request and coastal site plan to amount to a change in use requiring termination of the property's open space designation.[7] The trial court concluded, however, contrary to the assessor, that the approvals did not amount to a change in use as contemplated by § 12-504h because they did not result in a change to the essential character of the property as an area of open space land. Specifically, the trial court found that, on October 1, 2004, the date of revaluation, "the use of the subject property was [still] for airport purposes, not for the development of residential condominium units."[8] This appeal followed.[9]

---

[6] The underlying land remained assessed at \$294,420. The assessor added an additional \$2,222,500 in assessed value, representing 127 condominium unit options assessed at \$17,500 each.

[7] The assessor considered the approvals at issue as, essentially, the equivalent of a subdivision approval. See *Pauker* v. *Roig*, 232 Conn. 335, 336, 654 A.2d 1233 (1995).

[8] The trial court also relied on the fact that a declaration of condominium had not been filed on the land records pursuant to General Statutes § 47-220. See *Saybrook Point Marina Partnership* v. *Old Saybrook*, 49 Conn. App. 106, 110–11, 712 A.2d 980, cert. denied, 247 Conn. 904, 720 A.2d 515 (1998); *Stratford Arms Co.* v. *Stratford*, 7 Conn. App. 496, 500, 508 A.2d 842 (1986). It further rejected the defendant's claim that the assessor's termination of the property's open space classification was authorized by General Statutes § 12-55, reasoning instead that that authority emanated from § 12-504h.

[9] The defendant appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The defendant first claims that the trial court improperly concluded that the assessor acted illegally when she terminated the open space classification on the property and revalued that property accordingly. It argues, to the contrary, that the assessor properly acted within the purview of §§ 12-107e and 12-504h.[10] See footnote 1 of this opinion. According to the defendant, when the plaintiff applied for and received key approvals from land use agencies, thereby permitting it to develop the property as 127 condominium units, it changed the property's essential use from preserved open space to land to be developed and sold. The defendant argues further that the assessor's decision comported with state and local open space policies.

---

[10] The defendant also claims that its assessor had the authority to terminate the property's open space classification pursuant to General Statutes § 12-55 (b), which provides in relevant part that, after publishing and lodging each year's grand list for public inspection, a town's "assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. The assessor or board of assessors may increase or decrease the valuation of any property as reflected in the last-preceding grand list . . . ." The discretionary power to equalize grand lists conferred by § 12-55 "imports a watchtower role for the assessor to correct inequalities, whether too high or too low." *84 Century Ltd. Partnership* v. *Board of Tax Review*, 207 Conn. 250, 262, 541 A.2d 478 (1988), superseded by statute on other grounds as stated in *DeSena* v. *Waterbury*, 249 Conn. 63, 84, 731 A.2d 733 (1999); see also General Statutes § 12-63d. Nothing in § 12-55 (b), however, authorizes an assessor to remove an open space classification preliminary to exercising this role, and the case cited by the defendant in support of this argument; see *Matzul* v. *Montville*, 70 Conn. App. 442, 445–46, 798 A.2d 1002, cert. denied, 261 Conn. 923, 806 A.2d 1060 (2002); did not involve the removal of an open space classification. Rather, the authority to declassify open space clearly is conferred by § 12-504h only. It is a "well-settled principle of [statutory] construction that specific terms covering [a] given subject matter will prevail over general language of . . . another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 338, 898 A.2d 170 (2006). Accordingly, we reject the defendant's argument that § 12-55 authorized the assessor's actions in the present matter.

The plaintiff argues in response that the receipt of unused zoning approvals does not constitute a change of use as contemplated by § 12-504h. It notes that the trial court found that the property still was being used as an airport on October 1, 2004, and that there was no evidence to the contrary. According to the plaintiff, there is no guarantee that final approvals to develop the property ever will be obtained, and the approvals already secured allow only for the possibility of future use. The plaintiff disagrees that the assessor's actions comport with the statutory goal of keeping open space property in its open space condition. We agree with the plaintiff.[11]

[11] The defendant also argues that the trial court improperly concluded that the assessor may not revalue the property as a condominium until a declaration of condominium is recorded. See footnote 8 of this opinion. The plaintiff disagrees, citing statutory authority and case law in response.

Pursuant to Connecticut's general statutory valuation principles, set forth in General Statutes § 12-63 (a), "[t]he present true and actual value of land classified as . . . farm land . . . forest land . . . *or as open space land pursuant to section 12-107e . . . shall be based upon its current use* without regard to neighborhood land use of a more intensive nature . . . ." (Emphasis added.) In contrast, § 12-63 (a) provides that "[t]he present true and actual value of *all other property* shall be deemed by all assessors and boards of assessment appeals to be *the fair market value thereof* . . . ." (Emphasis added.)

Because we conclude herein that the assessor's removal of the property's open space classification, a prerequisite to its assessment at fair market value under § 12-63 (a), was improper, we need not reach the secondary question at which the parties' arguments are directed, i.e., whether a particular planned use of property, toward which preliminary steps have been taken by its owner, affects the property's fair market value for assessment purposes. We emphasize that none of the cases relied on by the parties or the trial court in this regard; see *Pauker* v. *Roig*, 232 Conn. 335, 345, 654 A.2d 1233 (1995); *Fyber Properties Killingworth Ltd. Partnership* v. *Shanoff*, 228 Conn. 476, 477, 636 A.2d 834 (1994); *Saybrook Point Marina Partnership* v. *Old Saybrook*, 49 Conn. App. 106, 109, 712 A.2d 980, cert. denied, 247 Conn. 904, 720 A.2d 515 (1998); *Stratford Arms Co.* v. *Stratford*, 7 Conn. App. 496, 498, 508 A.2d 842 (1986); involved property formerly classified as open space; accordingly, only the fair market value of the subject property was at issue. In contrast, in the present matter, both open space classification and valuation were at issue, although the former essentially was dispositive. In other words, once the trial court determined that the assessor improperly removed the property's open space classification, it need not have reached the hypothetical question of whether the zoning approvals impacted the

In concluding that the plaintiff had proven that the assessor improperly had removed the property's open space classification and, accordingly, reached a valuation for that property that was manifestly excessive, the trial court construed and applied pertinent statutory provisions. Accordingly, our review of the court's conclusions is plenary. See *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129, 848 A.2d 451 (2004). "A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted; internal quotation marks omitted.) Id. We conclude that the plain language of §§ 12-107e and 12-504h, read within the context of the overall statutory scheme affording favorable tax treatment to certain undeveloped property and case law applying that scheme, makes clear that the assessor acted improperly in removing the open space classification from the property on the basis of its receipt of certain zoning approvals.

Classification and declassification of open space land are accomplished pursuant to §§ 12-107e and 12-504h. See footnote 1 of this opinion. Section 12-107e gives municipal planning commissions and assessors authority, respectively, to designate and classify land as open

property's fair market value, because § 12-63 (a) required it to be assessed on the basis of its actual, current use, not its potential, highest and best use. As such, any authority pertaining to the determination of its fair market value was rendered irrelevant.

space.[12] Once a planning commission designates an area that it recommends should be preserved as open space and the designation receives legislative approval, land included within that area "may be classified as open space land for purposes of property taxation . . . *if there has been no change in the use of such area which has adversely affected its essential character as an area of open space land* [in the interim between such designation and] classification." (Emphasis added.) General Statutes § 12-107e (a). Accordingly, when a landowner applies to have land within a municipality's designated open space area classified as open space, the municipality's "assessor shall determine *whether there has been any change in the area* [*so*] *designated . . . which adversely affects its essential character as an area of open space land* and, if the assessor determines that there has been no such change, said assessor shall classify such land as open space land and include it as such on the grand list. . . ." (Emphasis added.) General Statutes § 12-107e (b).

Thereafter, "[a]ny land which has been classified by the record owner as . . . open space land pursuant to section 12-107e shall remain so classified without the filing of any new application subsequent to such classification . . . until either of the following shall occur: (1)

[12] Open space land is defined in General Statutes § 12-107b (3) as "any area of land, including forest land, land designated as wetland under section 22a-30 and not excluding farm land, the preservation or restriction of the use of which would (A) maintain and enhance the conservation of natural or scenic resources, (B) protect natural streams or water supply, (C) promote conservation of soils, wetlands, beaches or tidal marshes, (D) enhance the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations or sanctuaries or other open spaces, (E) enhance public recreation opportunities, (F) preserve historic sites, or (G) promote orderly urban or suburban development . . . ." Although § 12-107b has been amended since the assessor terminated the property's open space classification, the amendments involved technical changes not relevant to this appeal. For convenience, we refer to the current revision of the statute.

*The use of such land is changed to a use other than that described in the application for the existing classification by said record owner,* or (2) such land is sold by said record owner." (Emphasis added.) General Statutes (Rev. to 2003) § 12-504h. The foregoing provision was enacted "to eliminate the necessity of applying annually for the classification of property as . . . open space land. . . . The statute thus provides that property may retain its classified status until the occurrence of certain events that terminate the classification and require the filing of a new application, these events being the sale of the property or a change in its use." (Citation omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem,* supra, 269 Conn. 140.

Reading the foregoing provisions together, it is clear that, when determining whether a property should retain a previously existing open space classification, an assessor must determine whether the property's owner actually has begun to use the property in a way that somehow has altered its essential open space character. "[I]n the absence of any change in an open space area adversely affecting its essential character as such since the time of its designation, the assessor must classify such land as open space and include it as such on the assessment list . . . ." *Birchwood Country Club, Inc.* v. *Board of Tax Review,* 178 Conn. 295, 299, 422 A.2d 304 (1979).

Tellingly, neither § 12-107e nor § 12-504h directs an assessor, explicitly or implicitly, to consider the planned or potential use of property when determining whether it qualifies as open space, but instead, both statutes direct an assessor simply to consider the property's use. As a rule, "terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Lutters,* 270 Conn. 198, 206, 853 A.2d 434 (2004). Moreover, "[i]t is a principle of statutory

construction that a court must construe a statute as written"; *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 441, 623 A.2d 1007 (1993); and not, through interpretation, supply omitted language. See id., 441–42.

Applicable case law is in accord. Both General Statutes § 12-107c (a), governing classification of property as farmland, and §§ 12-107e and 12-504h, governing classification and declassification of property as open space, require municipal assessors to determine whether the property at issue is being used in a way that entitles it to favorable tax treatment under General Statutes § 12-63 (a).[13] Furthermore, all of the foregoing provisions are part of the same statutory scheme and were motivated by the same stated policy considerations. See General Statutes § 12-107a.[14] Consequently,

---

[13] As previously stated, § 12-63 (a) provides that farmland and forestland, like open space, must be assessed on the basis of their current usage rather than at their fair market value. See footnote 11 of this opinion.

[14] General Statutes § 12-107a provides in relevant part: "It is hereby declared (1) that it is in the public interest to encourage the preservation of farm land, forest land and open space land in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state, to conserve the state's natural resources and to provide for the welfare and happiness of the inhabitants of the state, (2) that it is in the public interest to prevent the forced conversion of farm land, forest land and open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land, forest land and open space land, and (3) that the necessity in the public interest of the enactment of the provisions of sections 12-107b to 12-107e, inclusive . . . is a matter of legislative determination." As this legislative declaration of policy makes clear, the purpose of the statutes providing for the creation of farmland, forestland and open space land designations is to encourage the preservation of property so designated "by ensuring against the conversion of such land to more intensive uses as the result of higher property tax assessments." (Internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 131. Although § 12-107a has been amended since the assessor terminated the property's open space classification, the amendments involved technical changes not relevant to this appeal. For convenience, we refer to the current revision of the statute.

this court's decision in *Marshall* v. *Newington*, 156 Conn. 107, 239 A.2d 478 (1968), concerning the use of property for purposes of farmland classification under § 12-107c, is instructive for purposes of determining what constitutes use of property for purposes of open space classification under §§ 12-107e and 12-504h.

In *Marshall*, a municipal assessor denied the application of landowners to have their property classified as farmland. Id., 108. Instead, he assessed the property on the basis of its fair market value, in part because, at the landowners' behest, it had become zoned for industrial use.[15] Id., 110, 111–13. In an appeal from that assessment, the trial court concluded that the highest and best use[16] of the property was as industrial property and, therefore, that the assessor was justified in refusing to classify the property as farmland. Id., 112. On further appeal, this court reversed the trial court's judgment. Id., 113. We explained: "[A]lthough the [trial court's] conclusions that the highest and best use of a particular parcel was for industrial purposes and that it was zoned for industrial purposes at the request or instigation of the owner would be relevant to a determination of the land's fair market value, *such conclusions are not relevant to a determination as to whether in fact the land*

[15] Additionally, the landowners' "principal source of income was from retail sales at a stand where they sold not only the corn grown on their cultivated lands but other produce, fruits, groceries and beer. . . . [Moreover] the plaintiffs [previously] had sold . . . adjoining industrial land for [significant sums and] . . . derived substantial income from the operation of the stand, from rents, from the sale of topsoil and fill and from horse purses." *Marshall* v. *Newington*, supra, 156 Conn. 112.

[16] "[U]nder the general rule of property valuation, fair [market] value, of necessity, regardless of the method of valuation, takes into account the highest and best value of the land. . . . A property's highest and best use is commonly defined as the use that will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." (Citation omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 25, 807 A.2d 955 (2002).

*is being used for farming purposes.*[17] A declared purpose of the statute granting favorable tax treatment to farmland is to prevent its forced conversion to more intensive uses as a result of an assessment based on its market value rather than its current use." (Emphasis added.) Id., 112–13. We concluded that the trial court's decision as to the proper classification of the land was erroneous because it was "predicated, *not on the actual use to which the land was being put, which is the criterion the statute specifies,* but on the fact that its highest and best use would be for industrial purposes and that at the instigation of the plaintiffs it was in a zone which would permit such a use." (Emphasis added.) Id., 113.

The assessor in the present case employed reasoning similar to that of the trial court in *Marshall* and, consequently, improperly concluded that continued open space classification for the property was unwarranted. Instead of looking to the *actual* use of the property at the time of the assessment, which indisputably remained as an airport, the assessor considered its *potential* highest and best use on the basis of unused zoning approvals secured by a contract purchaser.[18] In other words, the assessor considered the fair market value of the property as controlling the determination of whether it should be classified as open space. That approach, however, turns the analysis on its head.

---

[17] This court also found irrelevant the landowners' additional sources of income and their sale of adjacent industrial lands. See *Marshall* v. *Newington*, supra, 156 Conn. 112; see also footnote 15 of this opinion.

[18] When testifying about why she removed the open space classification from the property and assessed it as condominium units, the assessor opined that there was no need for her to inspect physically the property to determine whether it was entitled to continued open space status. She further explained: "At the current time . . . [the plaintiff has] the ability and the zoning option to build these condominium units and therefore to market them and, therefore, although they are not individual [condominium] units as such, *there is certainly the increased value because of their current status as being approved.*" (Emphasis added.)

Rather, as the statutory provisions make clear, the assessor first must consider whether property actually is being used as open space. General Statutes § 12-107e; General Statutes (Rev. to 2003) § 12-504h. If it is not, then assessment at fair market value, i.e., on the basis of its highest and best use, is warranted. General Statutes § 12-63 (a). If, to the contrary, property is being used as open space, then assessment must be on the basis of current usage, regardless of whether it has the potential to be used in a more lucrative fashion. See General Statutes § 12-63 (a); see also *Rustici* v. *Stonington*, 174 Conn. 10, 14, 381 A.2d 532 (1977) ("[i]n enacting § 12-63, the legislature intended that the current use value of open space land be less than what its fair market value might be").

Our conclusion is consistent with the policies underlying the statutory scheme at issue. When valuing open space land, "market value, a fundamental rule or standard of valuation of property taxation, must give way to an assessment based on the current use of the property [because] . . . the declared purpose of the statute is intended to grant favorable treatment to such property to prevent its forced conversion to more intensive use." (Internal quotation marks omitted.) *New Haven Water Co.* v. *Board of Tax Review*, 178 Conn. 100, 106, 422 A.2d 946 (1979). Section 12-107e is as much a conservation statute as it is a tax relief measure. *Torrington Water Co.* v. *Board of Tax Review*, 168 Conn. 319, 322, 362 A.2d 866 (1975). "Indeed, it would appear that the purpose of the tax relief is to aid the conservation effort." (Internal quotation marks omitted.) Id.

By requiring property classified as open space to remain taxed as such until its owner actually begins to use it in a contrary fashion or sells it, the statutes ensure that such property, even if ultimately developed, will have remained open space for as long as was practicable. If open space classification were removed at a

preliminary stage of development, that removal would only encourage the development to continue at an accelerated pace because the property owner suddenly would be forced to meet a greatly increased tax burden while the land still remained idle. Absent that economic pressure, a proposed project otherwise might be more easily abandoned. We recognize, moreover, the unfairness that could result from premature declassification of open space property solely because of its receipt of zoning approvals. If commencement of the project is delayed, as it apparently was in the present matter,[19] or the project ultimately is not pursued, the landowner will have been subject to a greatly increased tax burden on the basis of never realized potential while, in fact, the essential character of its property remained open space. On the basis of the foregoing analysis, we conclude that the trial court properly determined that the assessor had acted illegally when she terminated the property's open space classification and revalued it on the basis of its approved use as condominium units.

II

The defendant also claims that the trial court improperly granted the plaintiff relief pursuant to § 12-119 because the plaintiff did not prove that the assessment of its property was both manifestly excessive and illegal. According to the defendant, the plaintiff failed to show that the assessment was manifestly excessive and

[19] Approximately two years elapsed, subsequent to Leyland's receipt of zoning approvals, before the property ceased being used as an airport. Moreover, some four years had passed between the change in the defendant's zoning regulations permitting construction of the proposed project and Leyland's receipt of those approvals, due to a challenge to the zone change lodged by a citizens' group, which ultimately resulted in an appeal to this court. See *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 856 A.2d 400 (2004).

not a mere overvaluation.[20] The plaintiff argues in response that the trial court correctly found that the assessor acted contrary to law in removing the property's open space classification and that, because this case involves misclassification of exempt property, the manifestly excessive prong of § 12-119 does not apply. We agree with the plaintiff.

Our review of this claim is plenary, because the "applicability [of a statutory requirement] to a given set of facts and circumstances . . . [is] a question of law . . . ." *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 734, 830 A.2d 228 (2003). In its "Application for Relief against Excessive Tax Valuation," the plaintiff complained that, because its property illegally had been assessed as condominium units instead of open space land, the resultant valuation of that property was manifestly excessive. The parties did not dispute that the declassification of the property as open space caused its total assessed value to increase from $294,420 to $2,516,920. When testifying at trial, the assessor confirmed that her assessment of the property as condominium units flowed from her decision to remove its open space designation. In its memorandum of decision, the trial court concluded that, because "the use of the subject property was that of an active airport on October 1, 2004, the assessor was without authority to terminate the [property's] open space classification and then revalue the subject property for condominium use." Accordingly, it sustained the plaintiff's appeal. The court did not undertake a separate analysis, however, of whether the resulting assessment was manifestly excessive.

---

[20] The defendant also argues that the plaintiff did not prove that the assessor acted in disregard of applicable statutes. As we concluded in part I of this opinion, however, the assessor, in removing the open space classification from the property, acted contrary to §§ 12-63 (a), 12-107e and 12-504h. Accordingly, we reject this aspect of the defendant's second claim.

In *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 339, 597 A.2d 326 (1991), we explained the distinction between municipal tax appeals brought pursuant to § 12-119 and those authorized by General Statutes § 12-117a, formerly codified at General Statutes § 12-118. While the latter statute "provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property by an appeal to the board of [tax relief], and from it to the courts"; (internal quotation marks omitted) id.; § 12-119 allows a taxpayer to claim either that a town lacked authority to tax the subject property, "or that the assessment was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . ." (Internal quotation marks omitted.) Id., 340. In short, § 12-117a is concerned with overvaluation, while "[t]he focus of § 12-119 is whether the assessment is illegal." (Internal quotation marks omitted.) Id., 341.

Claims that an assessor has misclassified property and, consequently, overvalued it, comprise a category of appeals frequently pursued under the aegis of § 12-119. See, e.g., *Pauker* v. *Roig*, 232 Conn. 335, 338, 345, 654 A.2d 1233 (1995) (challenging property's assessment as subdivision lots instead of undivided parcel); *Fyber Properties Killingworth Ltd. Partnership* v. *Shanoff*, 228 Conn. 476, 477, 636 A.2d 834 (1994) (same); *Wysocki* v. *Ellington*, 109 Conn. App. 287, 295–96, 951 A.2d 598 (challenging assessor's failure to classify property as forest land), cert. denied, 289 Conn. 934, 958 A.2d 1248 (2008); *Saybrook Point Marina Partnership* v. *Old Saybrook*, 49 Conn. App. 106, 109, 712 A.2d 980 (challenging property's assessment as condominium when still legally apartment building at date of assessment), cert. denied, 247 Conn. 904, 720 A.2d 515 (1998); *Stratford Arms Co.* v. *Stratford*, 7 Conn. App. 496, 497–

98, 508 A.2d 842 (1986) (same). In such cases, the determinative issue typically is whether, as a matter of law, the property at issue properly was subject to taxation as the type of property falling within the classification applied by the assessor. See *Stratford Arms Co.* v. *Stratford*, supra, 499. If the plaintiff can show that it was not, it necessarily follows that the resulting assessment was manifestly excessive. See, e.g., *Saybrook Point Marina Partnership* v. *Old Saybrook*, supra, 112–13 (remanding case for new trial on issues of assessment and valuation after concluding that property illegally was assessed as condominium); see also *Stratford Arms Co.* v. *Stratford*, supra, 502 (setting aside judgment upholding assessment of property as condominium and remanding case with direction to reinstate prior assessment as apartment building after concluding that property illegally was assessed as condominium); cf. *Timber Trails Associates* v. *New Fairfield*, 226 Conn. 407, 413, 627 A.2d 932 (1993) (claim of improper declassification of forest land, coupled with allegation of thirtyfold tax increase, cognizable under § 12-119).[21] Moreover, under the general statutory valuation principles articulated in § 12-63 (a), the erroneous removal of a property's open space classification virtually guarantees that a manifestly excessive valuation will follow. Specifically, when open space property is assessed at

---

[21] The case of *E. Ingraham Co.* v. *Bristol*, 146 Conn. 403, 151 A.2d 700 (1959), cert. denied, 361 U.S. 929, 80 S. Ct. 367, 47 L. Ed. 2d 352 (1960), a § 12-119 appeal cited by the defendant in support of this claim, clearly is distinguishable. In that case, the plaintiff proved that the defendant's assessor had acted illegally in failing to assess real and personal property at its actual value, as required by statute. Id., 409. Instead, the assessor had taxed real property at 50 percent of its actual value and personal property, excluding motor vehicles, at 90 percent of its actual value. Id., 405. In other words, the property at issue clearly had been *undervalued* such that the assessment was "obviously too low . . . ." Id., 410. The plaintiff thus was unable to prevail under § 12-119 because the assessments, although legally improper, were neither claimed, nor found to be " 'manifestly excessive.' " Id. In the present matter, the plaintiff clearly alleged overvaluation of its property.

fair market value based on the highest and best use, rather than on its current usage, marked overvaluation is the result.

The matter before us illustrates the dynamic typically present in appeals alleging misclassification of property and resultant excessive valuation. The plaintiff alleged, and we agree, that the assessor acted contrary to § 12-504h in removing the property's open space classification and reassessing it accordingly. When the property ceased being assessed as open space, the basis of its assessment became its fair market value, based on its highest and best use as condominium unit options, rather than its actual current use as an airport. The parties agreed that the declassification of the property caused its assessed value to grow more than eightfold. Given the foregoing, we conclude that the trial court's determination that the assessor had illegally removed the property's open space classification necessarily incorporated an implicit finding that the resultant assessment was manifestly excessive.

The judgment is affirmed.

In this opinion the other justices concurred.