[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In 1991, Vernon completed the decennial revaluation mandated by General Statutes sec. 12-62. At the time that the Vernon assessor compiled the decennial revaluation list of October 1, 1991, the plaintiff owned a one-story, multi-tenant, industrial building of approximately 39,316 square feet in area, situated on the plaintiff's four-acre parcel of land in an Industrial Park. The Vernon assessor revalued the plaintiff's land and building at $1,708,000. The plaintiff did not appeal that revaluation.
The following year, on the list of October 1, 1992, the Vernon assessor valued the plaintiff's land and building at the valuation identical to the unappealed 1991 decennial revaluation. The plaintiff, however, appealed the 1992 valuation to the Board of Tax Review (the Board). The Board decided to make no change in the assessor's valuation. Thereafter, by an application dated April 27, 1993, as permitted by General Statutes sec. 12-117a, the plaintiff appealed to this court from the decision of the Board. By an amended application, dated June 13, 1996, the plaintiff made the appeal from the Board's decision apply to the lists of October, 1993, 1994, and 1995, in addition to the list of October, 1992. In all of those lists, the assessor's valuation of the plaintiff's land and building is identical to the unappealed 1991 decennial revaluation.
In the amended appeal from the Board's decision, the plaintiff alleges that the Vernon assessor "valued" the plaintiff's CT Page 5256-PPPPPP property at $1,195,600. That amount represents, however, the uniform assessment rate of seventy percent (70%), mandated by General Statutes sec. 62a (b), of the assessor's valuation of $1,708,000. In the interests of clarity, this memorandum uses "valuation" to mean the assessor's one hundred percent (100%) valuation, and "assessment" to mean the seventy percent (70%) of that valuation.
 I
In the amended appeal, the plaintiff alleged that the assessor's valuations on the lists of 1992, 1993, 1994, and 1995 were "grossly excessive, disproportionate, and unlawful." At the trial, the plaintiff claimed that that allegation refers to the valuations of its property as of the date of the 1991 revaluation and not the value of its property as of the date of the lists in the years following the 1991 revaluation. The following extract from the plaintiff's brief explains that claim further: "Jupiter is not
seeking to have its property revalued based on market conditions existing after October 1, 1991, the date of the decennial revaluation by . . . Vernon. This appeal challenges the assessment made by the Board of Tax Review on the list of October 1, 1992 (although the relevant date of valuation would be October 1, 1991) and accordingly seeks to have it reduced." (Emphasis in original. Plaintiff's Brief, Page 2.)
Consistently with this claim, the plaintiff's appraiser, who notes in his report (Exhibit B, page 1) that he inspected the property on July 27, 1994, and September 6, 1994, concluded, "(I)t is my opinion that the market value of the subject property as of October 1, 1991, the date of revaluation was . . . $1,055,000." The appraiser for the defendant also made a valuation as of October 1, 1991. In his report, he includes a copy of a letter to the Vernon assessor (Exhibit 5, page 1) referring to the appraiser's "most recent physical inspection . . . on November 20, 1995." The opinion of the defendant's appraiser was "as of October 1, 1991 the subject property is estimated to have . . . a market value of: $1,450,000."
Ordinarily, the task of the trier at this point in the proceedings would be to weigh the 1991 contemporaneous valuation of the Vernon assessor, the 1994 retrospective valuation of the plaintiff's appraiser, the 1995 retrospective valuation of the defendant's appraiser, and the testimony of the other witnesses, and decide this issue: Has the plaintiff sustained its burden of proving that the assessor's valuation was excessive. In this case, however, the plaintiff's claim to a reduction in valuation, in the interim CT Page 5256-QQQQQQ between decennial revaluations, presents an issue preliminary to the issue of whether the plaintiff has sustained its burden of proof. That preliminary issue is: In the years intervening between decennial valuations, in the absence of special circumstances not present in this case, may a property owner require an assessor to reduce the owner's assessment solely on the ground that the decennial revaluation, which was not appealed, overvalued the plaintiff's property. In the opinion of the court, the answer to that question is, "No."
 II
The court has three reasons for its opinion. The first is that the property owner by not appealing the decennial revaluation is barred from claiming that the decennial revaluation overvalues his property. The property owner has explicit statutory rights of appeal, first to the Board of Tax Review and then from the decision of the Board to the court. If he does not make timely use of those rights to challenge his decennial revaluation, he loses his rights to challenge it in a sec. 12-117a appeal. He is in exactly the same position that any property owner is in if, in Year One, he ignores the statutes governing valuation appeals, and, in Year Two, in a sec. 12-117a
appeal asks for a reduction in his Year Two valuation solely on the ground that his Year One valuation was too high. The time for claiming that the Year One valuation was too high expired by force of the time-limitations in the valuation-appeals statutes. Similarly, in the instant case, the time for claiming that the decennial revaluation valuation was too high had expired.
The court's second reason is that in dicta the Connecticut Supreme Court has declined to require assessors to reduce assessments in the years intervening between decennial revaluations, absent special circumstances. In Pauker v. Roig, 232 Conn. 335,343-344, 654 A.2d 1233 (1995), the court repeated two of those dicta:
"We recognized this distinction between mandated and permissive revaluations in 84 Century Century Ltd. Partnership v. Board of TaxReview, 207 Conn. 250, 251, 260-62, 541 A.2d 478 (1988) in which we concluded that, although tax assessors cannot be required to make an interim valuation of property, they may do so in accordance with sec.12-55, which authorizes assessors to equalize the tax lists. . .
"(T)his court has construed General Statutes secs. 12-62 and 12-64
to manifest the intent of the legislature that the `true and actual valuation' of real property that is required by sec. 12-64 is CT Page 5256-RRRRRR ordinarily accomplished by the ten year revaluation that is required by sec. 12-62. . . (W)e held, accordingly, that assessors need not undertake an interim revaluation on the ground of market fluctuations, at least in the absence of a showing of the destruction or expansion of the property, a substantial change in its use or zoning classification, or a decision by the taxpayer to go out of business.Ralston Purina Co. v. Board of Tax Review, 203 Conn. 425, 435-39.525 A.2d 91 (1987); Uniroyal, Inc. v. Board of Tax Review 182 Conn. 619,629, 438 A.2d 782 (1981) (Uniroyal II)."
Neither before nor since Pauker v. Roig has any Supreme Court opinion questioned the dictum "assessors cannot be required to make an interim valuation of property" in the absence of special circumstances, or the dictum that the true and actual valuation required by sec. 12-64 is, in the absence of special circumstances, "ordinarily accomplished by the ten year revaluation that is required by sec. 12-62." In seeking a revaluation for the years following the year of the decennial revaluation, the plaintiff is seeking a result opposed by these dicta.
The third reason is a provision in subparagraph (a) of General Statutes sec. 12-62. That subparagraph was enacted in 1989 as part of sec. 190 of P.A. 89-251, which amended sec. 12-62 and provided, inter alia, in the first sentence, for decennial revaluations commencing October 1, 1991. The words "shall . . . revalue" in that sentence are mandatory. State ex rel. Eastern Color PrintingCo. v. Jenks, 150 Conn. 444, 451, 190 A.2d 484 (1963).
The second sentence of subparagraph (a) provides, "The assessments derived from each such revaluation shall be used for the purpose of levying property taxes in such municipality in the assessment year in which such revaluation becomes effective and in each assessment year thereafter until the next succeeding revaluation in accordance with this section becomes effective." These words issue two orders: the first order is that the assessment derived from the decennial revaluation shall be used for levying taxes in the assessment year the revaluation becomes effective. Vernon has done this, as is obvious from the allegation that the assessor "valued" the plaintiff's property at $1,195,600.
The second order is that the municipality shall use the assessment derived from the decennial revaluation "for the purpose of levying property taxes in each assessment year thereafter [after the decennial revaluation year] until the next succeeding revaluation." In this case, the Vernon assessor, in using the 1991 CT Page 5256-SSSSSS revaluation assessment for the assessment years of 1992, 1993, 1994, and 1995, is doing exactly what the statute ordered him to do. By the subparagraph (a) legislation, the General Assembly clearly insulated assessors from claims, in the absence of unusual circumstances, for reduced assessments during the years intervening between decennial revaluations.
 III
In sum, the court finds that, in the absence of unusual circumstances not here present, the plaintiff may not require the Vernon assessor to reduce the assessment on the plaintiff's property on the lists of October 1, 1992, 1993, 1994, and 1995, and further finds that the Vernon assessor lawfully valued the plaintiff's property on those lists.
Judgment may enter for the defendant on the four counts of the amended appeal, and judgment may further enter that for purposes of taxation by the Town of Vernon the valuation of the property of the plaintiff on the lists of October 1, 1992, 1993, 1994, and 1995 is the same as the valuation of the property on the list of October 1, 1991, i.e. $1,708,000, and that the assessment on the property of the plaintiff on the lists of October 1, 1992, 1993, 1994, and 1995 is the same as the assessment on the property of the plaintiff on the list of October 1, 1991, i.e. $1,195,600.
Counsel for the defendant is to draft the judgment file and to submit it to counsel for the plaintiff for approval. If counsel are unable to agree on the form of the judgment file or on costs, counsel for the defendant is to notify Faith Yarusewicz, Judge's Secretary, Tolland Superior Court and the court will schedule a hearing on the matter. If counsel are in agreement, counsel are to endorse their approval on the judgment file and submit it to the clerk.
Rubinow State Trial Referee