GOODSPEED AIRPORT, LLC *v.* TOWN OF EAST
HADDAM
(AC 29526)

Flynn, C. J., and Robinson and Stoughton, Js.

Argued March 10—officially released June 30, 2009

*Kenneth Rosenthal*, for the appellant (plaintiff).

*John S. Bennet*, with whom, on the brief, was *Kenneth McDonnell*, for the appellee (defendant).

### Opinion

ROBINSON, J. The plaintiff, Goodspeed Airport, LLC, appeals from the judgment of the trial court denying relief on its claim seeking classification and assessment of its property as open space. The defendant, the town of East Haddam, had denied two applications filed by the plaintiff seeking open space classification. On appeal, the plaintiff claims that the court improperly (1) denied the plaintiff any relief for the defendant's wrongful refusal to grant an open space classification

and (2) concluded that the plaintiff was not entitled to classification for additional acreage of its property as open space pursuant to General Statutes § 12-107e. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the plaintiff's appeal. The present matter arises from three related tax appeals involving the plaintiff's 57.12 acre parcel located at 15 Lumberyard Road in East Haddam. The property contains a commercial utility airport that occupies 14.08 acres of the parcel. The airport has existed at this location since 1964 and operates under a special exception to the East Haddam zoning regulations. The remaining 43.04 acres contain open fields located entirely within a flood plain.

On the October 1, 2003 grand list, the property was valued at $2,354,020 with a tax assessment based on 70 percent of that value, or $1,647,810. On October 8, 2003, the plaintiff filed a written application to have 43.04 acres of its property classified, and thereby assessed, as open space pursuant to § 12-107e. The town assessor denied this application, and the plaintiff filed an appeal with the board of assessment appeals of East Haddam (board). The board elected not to conduct a hearing[1] and, on March 15, 2004, issued a notice pursuant to General Statutes § 12-111 (a).[2] The

[1] The board elected not to conduct an appeal hearing because it involved commercial property with an assessed value in excess of $500,000.

[2] General Statutes § 12-111 (a) provides in relevant part: "The board shall notify each aggrieved taxpayer who filed a written appeal in the proper form and in a timely manner, no later than March first immediately following the assessment date, of the date, time and place of the appeal hearing. Such notice shall be sent no later than seven calendar days preceding the hearing date except that the board may elect not to conduct an appeal hearing for any commercial, industrial, utility or apartment property with an assessed value greater than five hundred thousand dollars. The board shall, not later than March first, notify the appellant that the board has elected not to conduct an appeal hearing . . . ."

We note that the record indicates that notice was sent to the appellant on March 15, 2004. Section 12-111 (a), provides that such notice shall not be sent later than March first; however, this issue was not raised by the parties.

notice stated that any further appeal must be directed to the Superior Court.

Thereafter, on May 19, 2004, the plaintiff filed the first of three tax appeals in the Superior Court pursuant to General Statutes §§ 12-117a and 12-119. The original appeal subsequently was amended on June 14, 2004, and contained two counts. In count one, the plaintiff alleged that it was aggrieved by the town assessor's refusal to classify 43.04 acres of its parcel as open space pursuant to § 12-107e, thereby resulting in an excessive valuation of its property. In count two, the plaintiff claimed that the improper classification amounted to a wrongful assessment. Following a trial on the merits, the court concluded that the town assessor used an improper standard in determining the classification of open space land. The case was remanded to the assessor to make the necessary factual findings. On January 19, 2007, the assessor issued a determination of facts, concluding that 43.04 acres of the plaintiff's parcel qualified as open space.

While this first appeal was pending, the plaintiff filed two additional appeals in the Superior Court arising from the October 1, 2005 assessment of the property. The cases were consolidated on November 20, 2006. Specifically, the plaintiff alleged that it was aggrieved by the assessor's refusal to classify 56.12 acres of the parcel as open space,[3] thereby resulting in an excessive assessment value. The plaintiff also alleged wrongful assessment pursuant to § 12-119.

After a hearing, the court disposed of all three appeals through a memorandum of decision issued on December 20, 2007. In light of the assessor's factual findings on remand that the property qualified as open space,

---

[3] The 56.12 acres comprised the same 43.04 acres and an additional 13.08 acres for which the plaintiff sought open space classification.

the court determined that the only issue before it regarding the 43.04 acres was the fair market value. The court then concluded that the plaintiff had failed to sustain its burden of proving that the property was overvalued, and, accordingly, the first appeal was denied. The court also found in favor of the defendant on the consolidated 2005 appeals, concluding that the plaintiff did not establish that the assessor's refusal to grant open space classification for 13.08 of the remaining 14.08 acres was improper. The plaintiff then filed the present appeal. Additional facts will be set forth as necessary.

I

A

The plaintiff first claims that the court improperly denied it relief despite the court's conclusion that the defendant had wrongfully refused to grant open space classification for 43.04 acres of the 57.12 acre parcel.[4] Specifically, the plaintiff maintains that § 12-107e (d) establishes, as a matter of law, that the improper denial of an application for the classification of land as open space constitutes aggrievement and does not require a second showing of aggrievement by overassessment pursuant to § 12-117a. Accordingly, it is the plaintiff's position that the court's decision denying the plaintiff relief due to the absence of evidence of an overassessment is contrary to the statutory language of § 12-107e. We disagree.

The resolution of this issue rests on our interpretation of § 12-107e and its relationship to § 12-117a. "Our standard of review for issues of statutory interpretation is well settled. Issues of statutory construction raise questions of law, over which we exercise plenary

---

[4] For the purposes of this opinion, we discuss distinct portions of the parcel by referencing the specific acreage of an area of the parcel; however, it is relevant to note that the subject property is a single parcel that has not been subdivided.

review." (Internal quotation marks omitted.) *Urich* v. *Fish*, 112 Conn. App. 837, 840–41, 965 A.2d 567 (2009).

We begin our analysis with a review of the pertinent statutory authority. Section 12-107e (d) provides: "Any person aggrieved by the denial by an assessor of any application for the classification of land as open space land shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals." Section § 12-117a provides such a method for an aggrieved party to seek relief: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals . . . may . . . make application, in the nature of an appeal therefrom . . . to the superior court . . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . ." General Statutes § 12-117a.

In addition to the statutory language, we also must be cognizant of the extensive jurisprudence that has developed and shaped the current tax appeal process because it provides a necessary context to the statutory language and the court's conclusion. "Section 12-117a, which allows taxpayers to appeal the decisions of municipal boards of [assessment appeals] to the Superior Court, provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . . In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of [assessment appeals] to alter

the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains . . . . If a taxpayer is found to be aggrieved by the decision of the board of [assessment appeals], the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." (Internal quotation marks omitted.) *Breezy Knoll Assn., Inc.* v. *Morris*, 286 Conn. 766, 775–76, 946 A.2d 215 (2008).

The statutory language of § 12-117a does not delineate this two step process specifically; however, the development of this process can be traced back to our Supreme Court's analysis in *Ives* v. *Goshen*, 65 Conn. 456, 459–460, 32 A. 932 (1895), in which the court stated: "The assessment of property for taxation is an administrative proceeding; the judicial power is called into action to remedy an illegal assessment. The difficulty of obtaining redress in such a case through an ordinary civil action, probably induced the legislature to provide this proceeding whereby an aggrieved party might prevent the infliction of an injury, viz: the collection of an illegal tax, instead of being left to his inadequate remedy in a civil action after the injury has been inflicted. This law does not impose on the Superior Court the duties of assessors, nor of a board of relief, unless so far as may be necessary to grant relief to a person who has been aggrieved by the action of the board. The statute does not purport to give the court general authority to review the action of the assessors or board of relief; said 'court shall have power to grant such relief'—that is, relief to the aggrieved applicant—'as shall to justice and equity appertain . . . upon such terms and in such manner and form as appears equitable.' The question whether or not the applicant has been aggrieved is made a judicial question, and must be determined in the affirmative before the power to grant relief, which

is in its nature largely administrative, and is given in terms so broad as to imply great discretionary power, is called into action. An applicant can be aggrieved only by such action of the board of relief as must result in his payment of an unjust and therefore practically illegal tax; this can happen only by an improper listing of his own property, or, by an improper listing of the property of others so as to increase his taxation."

In the present case, the court analyzed the plaintiff's claim in accordance with the well established two step process for the evaluation of a § 12-117a appeal. The court recognized that the plaintiff wrongfully had been denied its original application for open space classification; however, after reviewing the testimony of each party's appraiser, the court ultimately concluded that the plaintiff did not sustain its burden of proving overvaluation. The propriety of the court's application of the § 12-117a rubric is the gravamen of the plaintiff's claim on appeal.

Under a plain reading of the language of § 12-107e, the plaintiff must establish aggrievement through the denial of an application for open space classification. Only after it establishes this initial threshold does the plaintiff become entitled to the "same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals." General Statutes § 12-107e (d). It is the plaintiff's contention that aggrievement is established by the denial of the application, and, accordingly, once the application is denied, the plaintiff then became entitled to a de novo review of the valuation of the property pursuant to the rights and remedies afforded to an aggrieved party under § 12-117a. The plaintiff further argues that it was not required to overcome the initial procedural

hurdle in § 12-117a of sustaining the burden of establishing aggrievement by overvaluation. This argument misconstrues the meaning of taxpayer aggrievement in a tax appeal.

As stated in *Ives* v. *Goshen*, supra, 65 Conn. 460, and adopted by its long line of legal progeny,[5] a taxpayer is aggrieved only by an action of a board that results in the payment of an illegal tax. Thus, for the plaintiff to assert a claim successfully that it was aggrieved by the denial of an application for open space classification, it must establish that the denial of the application resulted in an illegal assessment. This demonstration is inherent to its claim of aggrievement. Only after it satisfied this initial threshold is it entitled to "the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals." General Statutes § 12-107e (d). To interpret the language of § 12-107e to mean that a taxpayer is aggrieved by the mere denial of an application for open space classification would ignore the long line of precedent that has defined "aggrievement" as a term of art in the context of a tax appeal.[6]

We therefore conclude that a taxpayer who alleges aggrievement by the denial of an application for open space classification still must sustain the initial burden

[5] The two step process required to receive redress under § 12-117a was developed and implemented in the long line of cases that can be traced back to *Ives*. See *Breezy Knoll Assn., Inc.* v. *Morris*, supra, 286 Conn. 775–76; *Konover* v. *West Hartford*, 242 Conn. 727, 734–35, 699 A.2d 158 (1997); *O'Brien* v. *Board of Tax Review*, 169 Conn. 129, 131, 362 A.2d 914 (1975); *Sibley* v. *Middlefield*, 143 Conn. 100, 105, 120 A.2d 77 (1956).

[6] We further note that if we adopt the plaintiff's interpretation of aggrievement under § 12-107e, which circumvents the initial threshold of proving that the property was overvalued, the Superior Court would step into the role of an assessor and determine, de novo, the true value of property in any situation when an application has been denied. This result is in direct contradiction of the role of the Superior Court in an administrative appeal.

of proving that the denial has resulted in an overassessment of his property. It is not sufficient merely to establish that the application improperly was denied; to be aggrieved, the taxpayer must establish that the denial resulted in an overassessment. This conclusion is based on the plain language of § 12-107e and can be read in harmony with § 12-117a and the extensive case law that has developed in this area.[7] "[W]e are required to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 322, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). "Legislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum. Every new act takes its place as a component of an extensive and elaborate system of written laws. . . . Construing statutes by reference to others advances [the values of harmony and consistency within the law]. In fact, courts have been said to be under a duty to construe statutes harmoniously where that can reasonably be done." (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 157, 788 A.2d 1158 (2002).

Accordingly, the court properly analyzed the plaintiff's claim under the well established rubric for review of claims brought pursuant to § 12-117a.

---

[7] We further note that the plaintiff's interpretation of the statutory language renders the inclusion of the word "aggrievement" superfluous because the plaintiff's interpretation could be accurate if the statute simply read: Any person who has been denied an application for the classification of land as open space land shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals. "Interpreting a statute to render some of its language superfluous violates cardinal principles of statutory interpretation." *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008).

## B

The plaintiff also argues that the court improperly failed to conduct a de novo review of the valuation of the property in light of the overwhelming evidence that the plaintiff had submitted to establish that the assessment was excessive. We already have concluded that the plaintiff had to establish aggrievement by way of an overassessment before it was entitled to a de novo review of the value of the property classified as open space; therefore, we review this claim to the extent that the plaintiff is contesting the court's finding that the plaintiff did not sustain its burden of proving an overassessment of its property.

"[W]e review a court's determination in a tax appeal pursuant to the clearly erroneous standard of review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Sakon* v. *Glastonbury*, 111 Conn. App. 242, 246, 958 A.2d 801 (2008), cert. denied, 290 Conn. 916, 965 A.2d 554 (2009).

In the present case, Louis E. Durocher, the plaintiff's appraiser, testified that the highest and best use of the 14.08 acres was as vacant land, despite the fact that this property was currently used as an airport. After noting that highly comparable land sales were difficult to obtain, he selected five sales along the Connecticut

River. The court reviewed all five of these sales and concluded that "Durocher's so-called comparables are simply not similar to the subject property." The court also noted that Durocher did not attribute a value to the improvements on the airport site, having concluded that they were obsolete and of no value despite the fact that an airport facility was still operated at that location. Regarding the remaining 43.04 acres, Durocher conducted an independent valuation of this area and concluded that the value of the land, as open space, was $3000 per acre. The court found it significant that Durocher used the negative aspects of the airport located on the 14.08 acres to decrease the value of the remaining portion of the parcel, despite his previous conclusion that the highest and best use of the 14.08 acres was as vacant land. The court ultimately found Durocher's appraisal to lack credibility and, accordingly, determined that the plaintiff did not sustain its burden of proof.

On appeal, the plaintiff does not provide legal argument to undermine the court's credibility determination of his appraiser, Durocher;[8] rather, its principal argument is that the evidence provided by the defendant's assessor demonstrates that the property is overvalued because the defendant's assessor indicated a proposed value that itself was $400,000 less than the assessed value of the property as it appeared on the 2002 grand list. This argument ignores that fact that the plaintiff carries the burden of establishing aggrievement[9] and

[8] The plaintiff states in its brief that "extensive additional evidence presented by plaintiff in appraisals, reports and testimony on the value of the open space and nonopen space portions of the property, respectively, fully satisfied whatever preliminary showing the law may require by way of aggrievement." This statement, however, is not substantiated by even a cursory analysis of the evidence or a citation to the specific documents.

[9] "If the trial court finds that the taxpayer has failed to meet his burden because, for example, the court finds unpersuasive the method of valuation espoused by the taxpayer's appraiser, the trial court may render judgment for the town on that basis alone." (Internal quotation marks omitted.) *Union Carbide Corp.* v. *Danbury*, 257 Conn. 865, 870, 778 A.2d 204 (2001).

that the court found that the plaintiff's appraiser was not credible. Furthermore, the plaintiff's argument relies on the accuracy of testimony that itself was found to lack credibility. The court found that the defendant's appraiser, Robert Mulready, had provided credible testimony regarding the highest and best use of the property;[10] however, it also concluded that Mulready's valuation of the property lacked the same credibility as that of the plaintiff's appraiser. The court stated: "[T]he comparables selected by Mulready to establish value lacked the same credibility. For the most part, Mulready's selection of comparable sales, like those of Durocher, were not similar or comparable to the subject land." Therefore, the plaintiff's argument relies on the accuracy of testimony that the court found to lack credibility.

"[T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." (Internal quotation marks omitted.) *Abington, LLC* v. *Avon*, 101 Conn. App. 709, 719, 922 A.2d 1148 (2007). Here, the court provided an ample review of the testimony of both appraisers and specifically found that neither appraiser provided a credible valuation of the property. On the basis of this finding, the court concluded that the plaintiff failed to establish

---

[10] General Statutes § 12-63 (a) provides: "The present true and actual value of land classified as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e, or as maritime heritage land pursuant to section 12-107g shall be based upon its current use without regard to neighborhood land use of a more intensive nature, provided in no event shall the present true and actual value of open space land be less than it would be if such open space land comprised a part of a tract or tracts of land classified as farm land pursuant to section 12-107c. The present true and actual value of all other property shall be deemed by all assessors and boards of assessment appeals to be the fair market value thereof and not its value at a forced or auction sale."

that its property was overassessed. Upon review of the record, we find no reason to conclude that the court's determination was clearly erroneous, and, therefore, the plaintiff was not entitled to a de novo review of the valuation of its property.

## II

The plaintiff next claims that the court improperly concluded that it was not entitled to open space classification for an additional 13.08 acres of its property, which would result in all but one acre of the 57.12 acre parcel being classified as open space. The plaintiff had sought this classification in its 2005 application, while the original application for classification of the 43.04 acres was pending, and maintains that it satisfied the requirements delineated in § 12-107e.[11] Therefore, the plaintiff argues that the court should have concluded that the application was denied improperly by the defendant.

---

[11] General Statutes § 12-107e provides in relevant part: "(a) The planning commission of any municipality in preparing a plan of conservation and development for such municipality may designate upon such plan areas which it recommends for preservation as areas of open space land, provided such designation is approved by a majority vote of the legislative body of such municipality. Land included in any area so designated upon such plan as finally adopted may be classified as open space land for purposes of property taxation or payments in lieu thereof if there has been no change in the use of such area which has adversely affected its essential character as an area of open space land between the date of the adoption of such plan and the date of such classification."

Subsection (b) further states that "[a]n owner of land included in any area designated as open space land upon any plan as finally adopted may apply for its classification as open space land on any grand list of a municipality by [timely] filing a written application for such classification. . . . The assessor shall determine whether there has been any change in the area designated as an area of open space land upon the plan of development which adversely affects its essential character as an area of open space land and, if the assessor determines that there has been no such change, said assessor shall classify such land as open space land and include it as such on the grand list. . . ." General Statutes § 12-107e (b).

"[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 87, 931 A.2d 237 (2007). When the resolution of an issue requires us to review and to analyze the relevant town zoning regulations, "the interpretation of the regulations presents a question of law [and] our review is plenary." (Internal quotation marks omitted.) *Hescock* v. *Zoning Board of Appeals*, 112 Conn. App. 239, 244, 962 A.2d 177 (2009).

Here, the plaintiff maintains that it satisfied the requirements of § 12-107e because (1) its property was included in the areas designated for open space classification in the defendant's plan of development, (2) its application for classification was timely filed and (3) there had not been a change in use from the date of the planning commission designation and the date of the classification. Our review of the record, however, reveals that the court did not reach the second and third issues, having concluded that the plaintiff's property was not included in the areas designated as open space. It also is relevant to note that the plaintiff's 2005 application for open space classification sought the classification of all but one acre of the 57.12 acre parcel. This court already has addressed the trial court's analysis as it related to the 43.04 acre portion not used as an airport, and, therefore, we focus our analysis on the court's decision as it relates to 13.08 acres of the 14.08 acre portion of the property that the court found was used as a commercial airport.

In accordance with § 12-107e (a), the court began its analysis of the eligibility for open space classification with a review of the defendant's 1981 plan of development. Referencing a list of "existing and proposed open space" areas, the court acknowledged the inclusion of inland wetlands and watercourses and special flood hazard areas on this list, and concluded that the subject property was located within the area that the planning commission had recommended for open space. The court then noted, however, that the airport use of the property dated back to the 1960s and was approved before the adoption of the inland wetland laws and current restrictive flood regulations. Currently, the airport is located in a lake and riverfront district (LR district) with an overlay flood plain zone. The airport is a permitted use in the flood plain zone; however, it operates as valid preexisting use in the LR district. Because the airport operates pursuant to a special exemption, the court determined that "the issue must be whether the planning commission contemplated that the airport use of the subject property at the time it adopted the development plan, included the airport as open space land." In response to its own question, the court concluded that the airport was not intended to be included. Specifically, the court stated that "[t]he granting of the special exception to the zoning regulations authorizing the use of the subject property for airport service in the 1960s, as acknowledged in the [defendant's] plan of development, together with the physical presence of the airport runway, airport hangars, terminal building and the operation of the airport itself, support the assessor's determination that the airport land was not classified in the plan of development as 'open space land.' "

On appeal, the plaintiff argues that the property is included in the wetlands and flood hazard area and that there is no evidence to support the court's conclusion

that the plan of development intended to carve out exceptions to these designations. This argument ignores the fact that the airport operates pursuant to a special exemption. Thus, although the plaintiff attempts simply to characterize its land as wetlands or a flood plain, it was appropriate for the court to review the application cognizant of the fact that the land is currently the location of an operating commercial airport.

As provided in § 12-107e (a): "The planning commission of any municipality in preparing a plan of conservation and development for such municipality may designate upon such plan areas which it recommends for preservation as areas of open space land, provided such designation is approved by a majority vote of the legislative body of such municipality. . . ." In the 1981 plan of development, the defendant's planning commission contemplated seven types of open space land that qualified as "existing and proposed open space." This list, however, was included in the section of the plan of development that discussed proposed land use. Upon a close reading of the plan of development in its entirety, we note that the plan provides a detailed discussion of its intent to preserve open space that provides necessary context to the list of existing and proposed open space. Given the dual nature of the property, further discussion of the plan's intent is merited.

The plan of development sets forth a comprehensive "Environmental Goal" that encompasses several policies that are relevant to our discussion. In the section entitled "Unique Scenic and Natural Open Spaces," the plan states: "The overall intent of planning for open space preservation is to create an environment that continuously enriches the lives of the Town's present and future populations. It is the preservation of those key parcels of land which gives the Town its character or uniqueness, and if withdrawn from their present natural state would have a negative effect on the quality

of human experience." The plan then continues: "The framework for this section is based upon the three major functions of open space: (1) Conservation of natural resources; (2) Shaping community design; and (3) Provision of outdoor recreation areas."

Notwithstanding the guidance offered by this language, the plaintiff bases its claimed entitlement to open space classification on language that appears in a later section of the plan entitled: "Proposed Land Use." This section is intended to describe "in effect a 'blue print' for the future use of land in the Town of East Haddam. It is intended to provide decision makers in the years to come with a sound basis for evaluating development proposals and with a growth management tool which recognizes the need for balance among the several possible land uses." It is this section that lists land that is intended to fall in the category of existing and proposed open space. The list includes the following, without the benefit of additional discussion: "[1] All existing State of Connecticut Park and Forest Land, [2] Town of East Haddam municipal, recreational and open space areas, [3] East Haddam Fish and Game Club property which is related in the Eight Mile River Preservation Corridor, [4] Nature Conservancy Land, [5] Proposed Gateway Acquisition Areas, [6] Inland wetlands and water courses [7] Special flood hazard areas."

The following legal principles will aid our review of the plan of development. Pursuant to General Statutes § 8-23, a town planning commission is required to prepare, amend and adopt a plan of conservation and development for the municipality. We review this plan as we would a local ordinance to determine the intent of the planning commission. "A local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances. . . . A court must interpret a statute as written . . . and it is to be considered as a whole, with

a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be interpreted in their natural and usual meaning. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . The regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible. . . . [R]egulations are to be construed as a whole since particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them." (Internal quotation marks omitted.) *Fedus* v. *Zoning & Planning Commission*, 112 Conn. App. 844, 849–50, 964 A.2d 549, cert. denied, 292 Conn. 904, 905, 973 A.2d 103, 104 (2009).

Given the detailed discussion in a prior section of the plan specifically addressing open space preservation, we conclude that the categorical list contained in the "Proposed Land Use" section was intended as a summary of the types of land contemplated by the defendant that, if preserved as open space, would satisfy the overarching environmental goal. Therefore, the fact that an airport exists on a wetlands and flood hazard plain does not entitle the plaintiff, in itself, to open space classification of that land. The defendant set forth clear goals to be accomplished by open space preservation: (1) conserve natural resources, (2) shape community design and (3) provide outdoor recreation areas. The seven types of open space included in the later section of the plan satisfy these goals, thereby allowing the sections of the plan to be read in harmony. Given the unique nature of the airport, however, the determination of whether the defendant intended to include the airport is based on whether an operating commercial

airport satisfies the environmental goal. We conclude, as did the court, that it does not.

As found by the court: "The subject property contains a commercial utility airport with a 2100 foot paved runway. The airport does not have a control tower and primarily serves small single engine airplanes weighing 12,500 pounds or less. The subject airport consists of 14.08 acres of land containing a terminal building and two buildings with a combined total of thirty-five individual hangars." Furthermore, it is relevant to our analysis that the plaintiff implicitly conceded that the airport itself is not entitled to open space classification. The plaintiff specifically sought open space classification for 13.08 acres of the remaining 14.08 acres on the basis of the fact that the aggregate footprint of the buildings on the property was less than one acre, leaving 13.08 acres of undeveloped space. The court did not make a finding regarding the location or size of the buildings and specifically found that the airport consisted of 14.08 acres. The plaintiff did not seek an articulation on this issue, and, therefore, we will not consider the argument regarding the purported size of the airport. "The failure to seek an articulation of the trial court's decision to clarify [an] issue and to preserve it properly for appeal leaves this court without the ability to engage in a meaningful review." *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 330–31 n.5, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

The judgment is affirmed.

In this opinion the other judges concurred.