GOODSPEED AIRPORT, LLC *v*. TOWN OF
EAST HADDAM
(SC 18488)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

Argued April 20—officially released August 16, 2011

*Kenneth Rosenthal*, with whom were *John Bashaw* and, on the brief, *Daniel Klau*, for the appellant (plaintiff).

*John S. Bennet*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The plaintiff, Goodspeed Airport, LLC, appeals from the judgment of the Appellate Court affirming the decision of the trial court denying relief on its claim seeking classification and assessment of certain of its real property as open space. *Goodspeed Airport, LLC* v. *East Haddam*, 115 Conn. App. 438, 439–40, 973 A.2d 678 (2009). On appeal, following our grant of certification,[1] the plaintiff claims that the Appellate Court improperly concluded that: (1) 13.08 acres of the plaintiff's property were ineligible for open space classification; and (2) the plaintiff, notwithstanding the ongoing improper classification of its property by the defendant, the town of East Haddam, was not entitled to judicial relief from the improper assessment of 43.04

---

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's judgment denying the plaintiff's claim seeking classification and assessment of its property as open space?" *Goodspeed Airport, LLC* v. *East Haddam*, 294 Conn. 907, 908, 982 A.2d 1082 (2009).

acres. We agree with the plaintiff, and, accordingly, reverse the judgment of the Appellate Court.

The following facts and procedural history are set forth in the opinion of the Appellate Court. "The present matter arises from three related tax appeals involving the plaintiff's 57.12 acre parcel located at 15 Lumberyard Road in East Haddam. The property contains a commercial utility airport that occupies 14.08 acres of the parcel. The airport has existed at this location since 1964 and operates under a special exception to the [defendant's] zoning regulations. The remaining 43.04 acres contain open fields, located entirely within a flood plain.

"On the October 1, 2003 grand list, the property was valued at $2,354,020 with a tax assessment based on 70 percent of that value, or $1,647,810. On October 8, 2003, the plaintiff filed a written application to have 43.04 acres of its property classified, and thereby assessed, as open space pursuant to [General Statutes] § 12-107e. The [defendant's] assessor denied this application, and the plaintiff filed an appeal with the board of assessment appeals of [the defendant] (board). The board elected not to conduct a hearing and, on March 15, 2004, issued a notice pursuant to General Statutes § 12-111 (a). The notice stated that any further appeal must be directed to the Superior Court.

"Thereafter, on May 19, 2004, the plaintiff filed the first of three tax appeals in the Superior Court pursuant to General Statutes §§ 12-117a and 12-119. The original appeal subsequently was amended on June 14, 2004, and contained two counts. In count one, the plaintiff alleged that it was aggrieved by the [refusal of the defendant's assessor] to classify 43.04 acres of its parcel as open space pursuant to § 12-107e, thereby resulting in an excessive valuation of its property. In count two, the plaintiff claimed that the improper classification

amounted to a wrongful assessment. Following a trial on the merits, the court concluded that the [defendant's] assessor used an improper standard in determining the classification of open space land. The case was remanded to the assessor to make the necessary factual findings. On January 19, 2007, the assessor issued a determination of facts, concluding that 43.04 acres of the plaintiff's parcel qualified as open space.

"While this first appeal was pending, the plaintiff filed two additional appeals in the Superior Court arising from the October 1, 2005 assessment of the property. The cases were consolidated on November 20, 2006. Specifically, the plaintiff alleged that it was aggrieved by the assessor's refusal to classify 56.12 acres of the parcel as open space,[2] thereby resulting in an excessive assessment value. The plaintiff also alleged wrongful assessment pursuant to § 12-119.

"After a hearing, the court disposed of all three appeals through a memorandum of decision issued on December 20, 2007. In light of the assessor's factual findings on remand that [43.04 acres of] the property qualified as open space, the court determined that the only issue before it regarding the 43.04 acres was the fair market value. The court then concluded that the plaintiff had failed to sustain its burden of proving that the property was overvalued, and, accordingly, the first appeal was denied. The court also found in favor of the defendant on the consolidated 2005 appeals, concluding that the plaintiff did not establish that the assessor's refusal to grant open space classification for 13.08 of the remaining 14.08 acres was improper." *Goodspeed Airport, LLC* v. *East Haddam,* supra, 115 Conn. App. 440–42.

---

[2] "The 56.12 acres comprised the [original] 43.04 acres and an additional 13.08 acres for which the plaintiff sought open space classification." *Goodspeed Airport, LLC* v. *East Haddam,* 115 Conn. App. 438, 441 n.3, 973 A.2d 678 (2009).

The plaintiff then appealed to the Appellate Court. "On appeal [before the Appellate Court], the plaintiff claim[ed] that the [trial] court improperly (1) denied the plaintiff any relief for the defendant's wrongful refusal to grant an open space classification and (2) concluded that the plaintiff was not entitled to [open space] classification [of the 13.08] additional acreage of its property . . . pursuant to . . . § 12-107e." Id., 439–40. The Appellate Court disagreed, concluding that "a taxpayer who alleges aggrievement by the denial of an application for open space classification still must sustain the initial burden of proving that the denial has resulted in an overassessment of his property"; id., 446; and that the plaintiff had failed to satisfy that burden. Id., 450–51. As to the additional 13.08 acres for which the plaintiff sought open space classification, the Appellate Court concluded that such acres were ineligible for open space classification. Id., 456–57. This certified appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the plaintiff first claims that the Appellate Court improperly concluded that the 13.08 acres were ineligible for open space classification. Specifically, the plaintiff asserts that the Appellate Court's decision denying open space classification for the 13.08 acres is contrary to § 12-107e, the defendant's 1981 plan of development (plan), and prior decisions of this court. The defendant disagrees, claiming that the Appellate Court properly concluded that the 13.08 acres were ineligible for open space classification under both § 12-107e and the plan because the land is the site of the plaintiff's operating commercial airport. We agree with the plaintiff.

We begin by setting forth the standard of review applicable to the plaintiff's claim. In concluding that the

13.08 acres were ineligible for open space classification, the trial court construed and applied the plan and pertinent statutory provisions. Accordingly, our review of the trial court's conclusions is plenary. See *Aspetuck Valley Country Club, Inc.* v. *Weston*, 292 Conn. 817, 822, 975 A.2d 1241 (2009); *Griswold Airport, Inc.* v. *Madison*, 289 Conn. 723, 731, 961 A.2d 338 (2008). In addition, in examining the meaning of a particular statute, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z; see also *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ("[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]). Finally, "[t]o the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 149, 848 A.2d 451 (2004).

Pursuant to General Statutes § 1-2z, we begin with the text of the relevant statutory scheme governing the classification of land as open space. Section 12-107e provides in relevant part: "(a) The planning commission of any municipality in preparing a plan of conservation and development for such municipality may designate upon such plan areas which it recommends for preservation as areas of open space land, provided such designation is approved by a majority vote of the legislative body of such municipality. Land included in any area so designated upon such plan as finally adopted may be classified as open space land for purposes of property taxation or payments in lieu thereof if there has been

no change in the use of such area which has adversely affected its essential character as an area of open space land between the date of the adoption of such plan and the date of such classification.

"(b) An owner of land included in any area designated as open space land upon any plan as finally adopted may apply for its classification as open space land on any grand list of a municipality by filing a written application for such classification with the assessor thereof . . . . The assessor shall determine whether there has been any change in the area designated as an area of open space land upon the plan of development which adversely affects its essential character as an area of open space land and, if the assessor determines that there has been no such change, said assessor shall classify such land as open space land and include it as such on the grand list. . . ."

Pursuant to the statutory scheme, three elements are essential to a successful application seeking to classify land as open space. First, the land must be included in an area designated as eligible for open space classification in the municipality's plan of conservation or development. General Statutes § 12-107e (a). Second, the owner of the land must file an application for open space classification within the statutorily mandated period. General Statutes § 12-107e (b) and (c). Third, there must not have been a change in the use of the land between the date of the plan's adoption and the date of the classification, which adversely affects its condition as open space. General Statutes § 12-107e (a) and (b). If these conditions are satisfied, § 12-107e (b) provides that the "assessor shall classify such land as open space land" and the land may then be assessed on the preferential basis of its "current use" rather than traditional fair market value. General Statutes § 12-63

(a).[3] The dispute in the present appeal concerns the first element, namely, whether the 13.08 acres that the plaintiff sought to have classified as open space were eligible for open space classification under the plan.[4] Accordingly, we next review the pertinent provisions of the plan to determine whether the 13.08 acres are eligible for open space classification.

The plan, adopted by the defendant's planning and zoning commission (commission) on March 8, 1982, includes a chapter entitled "PROPOSED LAND USE." The introduction to the chapter provides: "The [p]roposed [l]and [u]se [p]lan is in effect a 'blue print' for the future of use of land in the [t]own of East Haddam. It is intended to provide decision makers in the years to come with a sound basis for evaluating development proposals and with a growth management tool which recognizes the need for balance among the several possible land uses.

"In formulating the final [p]roposed [l]and [u]se [p]lan many factors were taken into consideration: existing land use, natural resources data, citizen input at [c]omission workshops, public hearings, and meetings. The two [p]lanning [d]ata [m]aps in this chapter, synthesize the most significant factors used in formulating the [p]lan. Planning [d]ata [m]ap #1 [data map I] contains

---

[3] General Statutes § 12-63 (a) provides in relevant part: "The present true and actual value of land classified . . . as open space land pursuant to section 12-107e . . . shall be based upon its current use without regard to neighborhood land use of a more intensive nature, provided in no event shall the present true and actual value of open space land be less than it would be if such open space land comprised a part of a tract or tracts of land classified as farm land pursuant to section 12-107c. . . ."

[4] There is no dispute that the second element was satisfied, namely, that the plaintiff filed the application for open space classification of the 13.08 acres within the statutorily mandated period. As discussed later in this opinion, we remand the case to the trial court because the record reveals that the defendant's assessor never made a determination as to the third element, namely, whether there was any change in the use of the 13.08 acres between the date of the plan's adoption and the date of classification.

inland wetlands, flood plains, ground water aquifers and drainage basins. Planning [d]ata [m]ap #2 [data map II] combines soil information with existing and proposed open space land."

Following the introduction, under the heading "PRO-POSED LAND USE PLAN," the plan sets forth a list of seven specific areas included within the category of "Existing and Proposed Open Space." These seven areas consist of: all existing state park and forest land; the defendant's municipal, recreational and open space areas; the East Haddam fish and game club property; nature conservancy land; proposed gateway acquisition areas; inland wetlands and watercourses; and special flood hazard areas. In addition to the planning data maps, the chapter also incorporates a color map entitled "PROPOSED LAND USE" (land use map), which utilizes a green overlay to signify areas designated as "EXISTING AND PROPOSED OPEN SPACE." The land use map also features a legend for each of the proposed land uses discussed in the text of the plan.

Having reviewed the relevant statutory provisions and the plan and its associated maps, we next examine the 13.08 acres to determine whether that acreage, on account of its location, is eligible for open space classification under the plan. As found by the trial court and disclosed by the record, the 13.08 acres, as well as the entirety of the plaintiff's parcel, is located in an area north of Chapman Pond and south of the downtown of East Haddam that is bounded on the west by the Connecticut River and on the east by Creamery Road. In reviewing the plan map, this area is unambiguously included within the green overlay that the commission employed to demarcate areas that were either existing open space land or land eligible for open space classifi-

cation pursuant to § 12-107e.[5] In the present case, the plan map serves as a visual representation of each type of proposed land use set forth in the preceding chapter of the plan. Significantly, this court previously has relied on an official plan of development map in concluding that property was located within an area eligible for open space classification, even though the text of the original plan of development failed to utilize the term " 'open space . . . .' " See *Rolling Hills Country Club, Inc.* v. *Board of Tax Review*, 168 Conn. 466, 469, 473–74, 363 A.2d 61 (1975). Read in conjunction, therefore, the plan map demarcates the location of each of the proposed land uses, and the plan provides the explanation to the plan map's legend.

Additional provisions of the plan further demonstrate that the 13.08 acres are located within an area designated by the commission as proposed open space land eligible for open space classification. First, the plan states that inland wetlands and watercourse areas are included within the category of existing and proposed open spaces. The inland wetland overlay on data map I reveals that the plaintiff's property is located in an area designated as an inland wetland. Second, the plan provides that special flood hazard areas are included within areas designated as existing and proposed open spaces. Data map I shows that the plaintiff's property is located within a 100 year flood boundary, and the trial court noted in its memorandum of decision that the entirety of the plaintiff's property is located within a flood plain. Third, the plan also states that proposed gateway acquisition areas are included within areas designated as existing and proposed open spaces. The proposed gateway acquisition overlay on data map I

[5] As noted by the trial court in its memorandum of decision, the defendant conceded in that court that the plaintiff's property is located within an area that the commission designated as open space or eligible for open space classification.

demonstrates that all of the plaintiff's property is located within a proposed gateway acquisition area.

In light of the foregoing analysis, we conclude that the 13.08 acres are located within an area designated by the plan as proposed open space and, therefore, the 13.08 acres are eligible for open space classification.[6] Accordingly, the Appellate Court improperly determined that the 13.08 acres were ineligible for open space classification. Although we reverse the judgment of the Appellate Court, we cannot conclude on the record before us that the 13.08 acres are entitled to open space classification. A review of the record reveals that the defendant's assessor never made the determination, pursuant to § 12-107e (a) and (b), whether there was any adverse change in the condition of the 13.08 acres between the date of the plan's adoption and the date of classification. The assessor only made that determination with regard to the 43.04 acres previously classified as open space. Accordingly, although we conclude that the 13.08 acres are eligible for open space classification, we remand the case to the Appellate Court with direction to remand the case to the trial court for a hearing to determine whether there was any adverse change in the condition of the 13.08 acres between the date of the plan's adoption and the date the plaintiff sought open space classification.

The defendant disagrees that the 13.08 acres are eligible for open space classification, advancing several interrelated claims. The defendant first claims that both the Appellate Court and the trial court properly concluded that the plan does not designate the 13.08 acres as proposed open space. Specifically, the defendant contends that the commission could not have intended

---

[6] We note that our conclusion is consistent with the determination of the trial court, not challenged on appeal, that the surrounding 43.04 acres of the plaintiff's property are entitled to open space classification.

to include as proposed open space the plaintiff's operating commercial airport. We disagree. First, we note that, at the time that the commission adopted the plan in 1982, the airport had been in operation for approximately twenty years and, therefore, the commission would have been aware of its existence. Indeed, the airport only existed because of a special exception permit granted by the commission in 1963. Second, as previously discussed, the commission, in demarcating areas of existing and proposed open space on the detailed plan map, unmistakably included the entirety of the plaintiff's property within the green overlay corresponding to existing and proposed open space. Third, of the seven categories of land that the commission stated corresponded to existing and proposed open spaces, the plan maps clearly demonstrate that the commission overlaid three categories onto the plaintiff's property, namely, inland wetland area, special flood hazard area and proposed gateway acquisition area. On the basis of these considerations, we cannot conclude that the commission did not intend to designate the plaintiff's property as eligible for open space classification.

The defendant next claims that the plaintiff's use of the 13.08 acres renders them ineligible for open space classification. At the heart of the defendant's claims is its assertion that the 13.08 acres are ineligible for open space classification because they are part of the 14.08 acres that the trial court found constitutes the plaintiff's operating commercial airport. According to the defendant, the very nature of an operating airport renders the land that it occupies ineligible for open space classification, and that ineligibility extends to all portions of the 14.08 acres, including the 13.08 acres that the plaintiff seeks to classify as open space. We disagree.

We reject the defendant's contention that the existence of the plaintiff's airport renders the surrounding

13.08 acres ineligible for open space classification.[7] In *Rolling Hills Country Club, Inc.* v. *Board of Tax Review,* supra, 168 Conn. 474, we similarly rejected the claim that "a private golf course and country club on developed land does not qualify for an open space tax classification." (Internal quotation marks omitted.) The court in *Rolling Hills Country Club, Inc.,* reasoned that "[t]here is no merit to this claim since neither [General Statutes §] 12-107b[8] nor any other legislation pertaining to 'open space land' requires that it be left in its pristine, natural state. Nowhere is the word 'undeveloped' employed, and the specific inclusion of farmland clearly militates against any such requirement. The basic concept is that the land be 'open,' and not that it be entirely unused, undeveloped or unimproved." Id. We also note this court's recent decision in *Griswold Airport, Inc.* v. *Madison,* supra, 289 Conn. 723. There, the issue was whether the trial court properly determined that the town's assessor had acted illegally in terminating the open space classification of the plaintiff's airport property merely because the property was approved for use as condominium units. Id., 738. In that case, the plaintiff owned a forty-two acre parcel of land on which it operated a small airport and related structures, thirty-two

---

[7] Despite the defendant's contention that the airport renders the surrounding 13.08 acres ineligible for open space classification, the defendant has not challenged on appeal the trial court's finding classifying as open space the 43.04 acres of the plaintiff's property that similarly surround the airport.

[8] General Statutes § 12-107b (3) provides in relevant part: "The term 'open space land' means any area of land, including forest land, land designated as wetland under section 22a-30 and not excluding farm land, the preservation or restriction of the use of which would (A) maintain and enhance the conservation of natural or scenic resources, (B) protect natural streams or water supply, (C) promote conservation of soils, wetlands, beaches or tidal marshes, (D) enhance the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations or sanctuaries or other open spaces, (E) enhance public recreation opportunities, (F) preserve historic sites, or (G) promote orderly urban or suburban development . . . ."

acres of which were classified as open space pursuant to the town's open space plan. Id., 727. In affirming the judgment of the trial court, we concluded that the plaintiff's airport property was entitled to retain its open space classification until the plaintiff actually began to use the property in a contrary fashion, namely, as a condominium development. Id., 737–38. In sum, we disagree with the defendant's contention that a property featuring an airport is per se ineligible for open space classification.

We additionally note that, although the trial court stated in its memorandum of decision in the present case that the airport consisted of 14.08 acres, our review of the record reveals no evidence to support the finding that the airport physically occupies 14.08 acres. It appears that the trial court arrived at that conclusion by subtracting the previously classified open space land, namely, 43.04 acres, from the total size of the defendant's parcel, namely, 57.12 acres, and arrived at the determination that the remaining 14.08 acres constituted the airport. The plaintiff avers, however, that the airport physically occupies less than one acre, and for that reason its 2005 application for open space classification properly requested that the defendant classify 13.08 acres of the 14.08 acres as open space. Accordingly, because there is no finding as to the area physically occupied by the airport, namely, whether it actually physically occupies one acre, we additionally remand the case to the Appellate Court with direction to remand the case to the trial court for a hearing to determine the actual size of the airport and, as a result, whether the plaintiff is entitled to open space classification for 13.08 acres.

II

The plaintiff next claims that the Appellate Court improperly concluded that it was not entitled to judicial

relief from the defendant's improper assessment of the 43.04 acres. Specifically, the plaintiff contends that the defendant's ongoing improper assessment of the 43.04 acres at fair market value, despite the fact that the acreage is classified as open space, contravenes § 12-63 (a) and constitutes aggrievement under § 12-107e (d), thereby entitling the plaintiff to a de novo determination of the value of the property by the trial court. According to the plaintiff, a taxpayer is sufficiently aggrieved and entitled to a de novo determination of value when their property is wrongfully misclassified under § 12-107e (d), and then assessed at an improper valuation. The defendant disagrees, claiming that the Appellate Court properly concluded that, pursuant to § 12-117a, the plaintiff was required to establish not simply that its application for open space classification was wrongly denied, but also that the denial of its application resulted in an overassessment. We agree with the plaintiff.

As we previously have set forth, "[o]ur review of this claim is plenary, because the applicability [of a statutory requirement] to a given set of facts and circumstances . . . [is] a question of law . . . ." *Griswold Airport, Inc.* v. *Madison,* supra, 289 Conn. 739. "[T]o the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem,* supra, 269 Conn. 149.

Before discussing the plaintiff's specific claims, we set forth the legal framework governing tax appeals taken pursuant to § 12-117a. "Section 12-117a, which allows taxpayers to appeal the decisions of municipal boards of tax review to the Superior Court, provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . . In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first

instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property. . . .

"Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of tax review to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains . . . . If a taxpayer is found to be aggrieved by the decision of the board of tax review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property. . . . If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation." (Citations omitted; internal quotation marks omitted.) *Konover* v. *West Hartford*, 242 Conn. 727, 734–36, 699 A.2d 158 (1997).

The following additional facts and procedural history are necessary for the resolution of the plaintiff's claim. In the first count of the plaintiff's amended statement of appeal from the decision of the board, the plaintiff claimed that the wrongful refusal of the defendant's

assessor to classify the 43.04 acres as open space led to an excessive valuation of that acreage. Specifically, the plaintiff alleged that the excessive valuation resulted from the defendant assessing the property on the basis of its fair market value use as commercial property, rather than as open space. The trial court, in a memorandum of decision dated November 7, 2006, agreed with the plaintiff that the assessor had used an improper standard in determining whether the 43.04 acres were eligible for open space classification and remanded the case to the assessor for a correct determination. On remand, the assessor determined that the 43.04 acres were eligible for open space classification. Thereafter, in its December 20, 2007 memorandum of decision, the trial court reiterated that it previously had held that the assessor had improperly denied the plaintiff's application for open space classification and that, following remand, the assessor had concluded that the 43.04 acres qualified as open space. Accordingly, the trial court stated that "the only remaining issue in this appeal is the determination of the fair market value of the subject property as of the revaluation year of October 1, 2002."

Evidence adduced at the hearing on valuation, as set forth in the trial court's decision, reveals the following additional facts. The defendant previously had assessed the value of the plaintiff's entire parcel, as of October 1, 2002, at $2,354,020.[9] The plaintiff, through its appraiser Louis Durocher, valued the 43.04 acres at issue in this appeal as open space with an approximate value of $129,000, or $3000 per acre.[10] Durocher reached this

---

[9] We note that this results in an approximate value of $41,211 per acre.

[10] The disputed value of the remaining 14.08 acres is not at issue on appeal. Consistent with our remand, however, and upon a showing that the 13.08 acres have not adversely changed since the date of the plan's adoption and the date of classification, the plaintiff may renew his claim that the 13.08 acres are entitled to open space classification and assessment on the basis of their current use pursuant to § 12-63 (a).

valuation on the basis of his conclusion that the land was not suitable for development and was best utilized as open space land. The appraiser for the defendant, Robert J. Mulready, elected to divide the property into airport and nonairport use, and in lieu of the plaintiff's claimed 43.04 acres of open space, Mulready utilized 37.41 acres, which he termed "secondary land." Mulready then valued the secondary land at approximately $550,000, or $14,700 per acre. After setting forth the controlling statutory framework and reviewing the competing assessments proffered by the parties, the trial court "recognize[d] that Mulready's appraisal on behalf of the [defendant] is lower in value than the assessor's value of the subject property. However, in view of the court's finding that the plaintiff has not sustained its burden of showing aggrievement, there is no reason for the court to conclude that the subject [property] has been overassessed." The court then concluded that the plaintiff was not an aggrieved party with respect to its tax appeal challenging the assessment of the 43.04 acres.

As previously set forth, once an assessor determines that land is eligible for open space classification, "said assessor shall classify such land as open space land and include it as such on the grand list." General Statutes § 12-107e (b). The valuation or assessment of land classified as open space is controlled by the language contained in § 12-63 (a), which provides in relevant part: "The present true and actual value of land classified . . . as open space land pursuant to section 12-107e . . . shall be based upon its current use without regard to neighborhood land use of a more intensive nature, provided in no event shall the present true and actual value of open space land be less than it would be if such open space land comprised a part of a tract or tracts of land classified as farm land pursuant to section 12-107c. . . ." If a landowner disputes the assessor's

determination regarding open space classification, § 12-107e (d) provides that "[a]ny person aggrieved by the denial by an assessor of any application for the classification of land as open space land shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals."

A person claiming aggrievement under § 12-107e (d) is permitted to file an appeal pursuant to § 12-117a. Section 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom . . . to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . . If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any costs awarded by the court. . . ."

In the present case, the plaintiff sought open space classification for, and the accompanying preferential tax assessment of, the 43.04 acres with respect to the revaluation year of October 1, 2002. The defendant's assessor denied the application and assessed the property on the basis of its fair market value, namely, as commercial use property in conjunction with the air-

port. Although the trial court determined that the assessor had improperly denied the plaintiff's application for open space classification and concluded that the 43.04 acres were entitled to open space classification, the defendant has continued to assess the 43.04 acres on the basis of its prior valuation of the acreage as commercial use. The fact that the assessment has remained constant, despite the change in classification from commercial property to open space land, is facially inconsistent with the mandate of § 12-63 (a) that land classified as open space is entitled to assessment on the basis of its current use as open space land.

In a related context we previously have stated that, "under the general statutory valuation principles articulated in § 12-63 (a), the erroneous removal of a property's open space classification virtually guarantees that a manifestly excessive valuation will follow. Specifically, when open space property is assessed at fair market value based on the highest and best use, rather than on its current usage, marked overvaluation is the result." *Griswold Airport, Inc.* v. *Madison*, supra, 289 Conn. 741–42; see id., 742 (improper change in classification, and resulting eightfold increase in assessment, manifestly excessive). The converse is also true: the improper refusal to classify land as open space, combined with the ongoing assessment of that land, once classified as open space, on the basis of its prior classification as commercial property, is virtually guaranteed to result in an improper, and very likely excessive, valuation. In the present case, the plaintiff and the defendant produced competing evidence at trial as to the proper value of the 43.04 acres as classified open space, namely, $3000 and $14,700 per acre, respectively.[11] Although the parties disagreed as to the proper valua-

---

[11] In a letter from counsel for the defendant to counsel for the plaintiff, counsel for the defendant stated that, "[f]or your information, the [defendant] applies a uniform assessment per acre to classified open space of $210."

tion of the 43.04 acres as open space, both of these numbers were substantially lower than the defendant's ongoing assessment of the 43.04 acres at approximately $41,211 per acre.[12] As this court has stated, " '[m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the [trial] court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation.' " *Konover* v. *West Hartford,* supra, 242 Conn. 734–35.

The trial court's determination that the defendant improperly denied the plaintiff's application for open space classification of the 43.04 acres, in addition to the evidence adduced at trial showing that the acreage continued to be assessed at a valuation stemming from its prior classification as commercial property, demonstrate that the plaintiff was entitled to the remedies set forth in § 12-117a, including the trial court's de novo determination of the value of the 43.04 acres on the basis of their current use.[13] Accordingly, the Appellate

[12] Although the trial court found not credible the testimony of both Durocher and Mulready, it primarily did so with regard to their competing assessments of the value of the 14.04 acres, the value of which is not at issue in this appeal. To the extent that the trial court's rejection of the comparables used by both Durocher and Mulready related to their efforts to establish the value of the plaintiff's parcel as a whole, including the 43.04 acres, the trial court's criticism was that the plaintiff's property is located in a flood plain and the comparables were all located in buildable lots well above the flood plain. The trial court's concern appears to have been that the comparables resulted in too high a valuation being offered by Durocher and Mulready, a result that actually supports the plaintiff's claim that the 43.04 acres are being overassessed by the defendant in that the acreage is flood prone open space.

[13] The defendant disagrees, setting forth several related propositions in support of its claim that the trial court properly concluded that the plaintiff failed to demonstrate that the 43.04 acres, even if classified as open space, were overassessed by the defendant. The defendant first contends that the plaintiff failed to demonstrate that it was aggrieved by an overassessment. For the reasons set forth in this opinion, we disagree and conclude that the plaintiff demonstrated that it was aggrieved by the defendant's overassessment as a result of the defendant's improper refusal to classify the 43.04 acres as open space and the defendant's ongoing assessment of that acreage

Court improperly concluded that the trial court properly determined that the plaintiff had failed to demonstrate that it was entitled to a de novo determination of the value of the 43.04 acres on the basis of the defendant's ongoing overassessment of the 43.04 acres.

In sum, the Appellate Court improperly concluded that the trial court properly determined that the 13.08 acres were ineligible for open space classification and that the plaintiff was not aggrieved pursuant to § 12-117a on the basis of the defendant's ongoing overassessment of the 43.04 acres. The case, therefore, is remanded to the Appellate Court with direction to remand the case to the trial court for further proceedings to determine: first, whether 13.08 out of the 14.08 acres, or a portion thereof, should be classified as open space on the basis of the trial court's findings on remand as to the actual size of the airport and whether there was any adverse change in the condition of the 13.08 acres between the date of the plan's adoption and the date the plaintiff sought open space classification; and second, the true and actual value of the 43.04 acres as open space land.

at its prior valuation as commercial property. The defendant next posits that, because the 43.04 acres were already being used for their highest and best use, namely, as an airport, such acres must be taxed at the equivalent of fair market value because "[t]here is no tax break to be had from its classification." We disagree and reject the defendant's assertions underlying this claim, namely, that the 43.04 acres, despite their classification as open space, remain commercial property, and that they should be assessed on the basis of their "highest and best use" as a commercial airport. First, the record demonstrates that the airport and its related structures are not located on the 43.04 acres. Second, the defendant has not challenged the trial court's conclusion that the 43.04 acres were entitled to open space classification under the criteria set forth in § 12-107e. Third, we disagree that the 43.04 acres, once classified as open space land, remain subject to a fair market value assessment with a highest and best use as an airport or other commercial use property, rather than being assessed on the basis of their current use under § 12-63 (a) as open space land. See *Griswold Airport, Inc.* v. *Madison*, supra, 289 Conn. 723 (must look to actual use of property, not its potential highest and best use).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings in accordance with the preceding paragraph of this opinion.

In this opinion the other justices concurred.